IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFRY BUTLER, et al.

      v.                   :   Civil Action No. DKC 10-2747

DIRECTSAT USA, LLC, et al.

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this Fair Labor Standards Act ("FLSA") case are motions for conditional certification of a collective action and facilitation of notice (ECF No. 41), and to seal (ECF No. 43) filed by Plaintiffs Jeffry Butler and Charles Dorsey. Also pending is a motion to seal filed by Defendants DirectSAT USA, LLC ("DirectSAT"), UniTek USA, LLC ("UniTek"), and UniTek Global Services, Inc. ("UGS"). (ECF No. 56). The issues are fully briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Plaintiffs' motion for conditional certification of a collective action and facilitation of notice will be granted in part and denied in part, as will the parties' motions to seal.

## I.   Background

### A.   Factual Background

Defendant DirectSAT, a subsidiary of UniTek and UGS, provides satellite installation services to DirectTV customers throughout the country.   Plaintiffs are technicians who previously installed, upgraded, and serviced DirectTV equipment at customer locations in Maryland, Virginia, and the District of Columbia.   (*See* ECF No. 41-8) (setting forth the job description for the "technician" position).[1]   Jeffry Butler began working for Defendants as a technician in October 2007 and held this position for approximately ten months before being promoted to warehouse manager.   Although initially based out of DirectSAT's warehouse in Capitol Heights, Maryland, Mr. Butler transferred to the warehouse in Waldorf, Maryland, after the Capitol Heights warehouse closed.   Charles Dorsey starting working for Defendants as a technician in May 2009 and held this position for approximately seven months.   During his tenure, Mr. Dorsey was also based out of DirectSAT's Waldorf, Maryland warehouse. In their declarations and deposition testimony, Mr. Butler and Mr. Dorsey, the named Plaintiffs, allege the following facts.

---

[1] Defendants classified Plaintiffs' positions as non-exempt under federal and state wage and hour laws.

Defendants pay their technicians "based on job or piece rates." (ECF No. 54, at 14).[2]  Thus, rather than receiving a typical hourly wage, DirectSAT compensates technicians based on the work they complete at a customer's home by assigning a value to each completed job.  Technicians are then credited with the value assigned to their jobs, and this value becomes the basis for calculating wages, including overtime.  "For example, if a technician worked 40 hours in a particular week and accumulated $1,000 in production, the technician's effective hourly rate would be $25.00/hour." (*Id.* at 16).  Technicians receive different piece rates depending on their technician level, which varies based on experience and efficiency.  Higher-ranked technicians receive higher piece rates.

Plaintiffs assert that although DirectSAT's employee handbook provides that technicians will be paid for any overtime hours worked, the company did not follow this formal policy. Both Mr. Butler and Mr. Dorsey state that general managers and supervisors instructed them to record time only when they were performing jobs at customer locations.  They also assert that management either encouraged or instructed them to work "off the clock" in the evenings after they arrived home and in the mornings before arriving at their first jobs. (*E.g.*, ECF No.

---

[2] In this memorandum opinion, the page numbers cited in the text are the page numbers provided by the ECF system.

41-9, Butler Decl., at 2).   During this time, Plaintiffs would perform numerous uncompensated tasks, including building satellite dishes for upcoming installations, preparing routes and schedules based on company emails listing next-day installations, pre-calling customers, loading their vehicles at the warehouse, and attending company meetings.   These tasks resulted in Plaintiffs routinely working in excess of forty hours per week.

Plaintiffs also insist that they were instructed by their general managers not to record overtime on their weekly timesheets.   Mr. Butler occasionally recorded his excess hours despite this instruction, but the company regularly refused to pay him overtime.   Mr. Dorsey's timesheets were returned to him for correction when he recorded more than forty hours in a given week, and he does not recall ever being paid any overtime.   Both complained to management at their warehouses about this issue. In response, management informed them that "[t]here was nothing [it] could do" because the non-payment of overtime was "a corporate decision" (ECF No. 54-15, Butler Dep., at 31), and that "[t]hose were the rules, follow them or work somewhere else," (ECF No. 54-17, Dorsey Dep., at 24).

### B.   Procedural Background

Plaintiffs filed a complaint against Defendants on October 4, 2010, on behalf of themselves and similarly situated others.[3] They sought to bring an FLSA overtime claim as a collective action pursuant to 29 U.S.C. § 216(b), as well as state overtime and unpaid wage claims as class actions pursuant to Federal Rule of Civil Procedure 23.   Defendants subsequently moved to dismiss the complaint.   On July 6, 2011, the court issued a memorandum opinion and order, granting in part and denying in part Defendants' motion to dismiss.[4]   Defendants then answered the complaint, and the parties began discovery.

On November 1, 2011, Plaintiffs moved for conditional certification of a collective action for DirectSAT technicians

---

[3] Prior to this time, Mr. Butler had opted-in to a nationwide collective action against Defendants that was proceeding in the United States District Court for the Western District of Wisconsin.   He subsequently elected to opt-out of that action, but he did not obtain court approval to do so as required by Federal Rule of Civil Procedure 41(a).   Before decertifying that collective action, the Wisconsin court entered partial summary judgment in favor of Defendants, concluding that a limited number of pre- and post-shift tasks at issue in that case were not compensable under the FLSA.   *Espenscheid v. DirectSAT USA, LLC*, No. 09-cv-625-bbc, slip op. at 49-52 (W.D.Wis. April 11, 2011).   When the collective action was decertified, the court dismissed the remaining claims without prejudice to the opt-in plaintiffs.

[4] Specifically, the court dismissed Plaintiffs' claim under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3-501, *et seq.*   All other claims were allowed to proceed.

based out of the company's Waldorf and Beltsville warehouses during the past three years. (ECF No. 41).[5] They also requested facilitation of notice to potential opt-in plaintiffs. (*Id.*).[6] They submitted numerous exhibits with their motion, and they subsequently filed a motion to seal four of those exhibits pursuant to a stipulated confidentiality order that the court had previously approved. (ECF No. 43). Before responding to Plaintiffs' certification motion, Defendants filed two motions to compel discovery responses from Mr. Dorsey and to compel Mr. Dorsey's deposition. (ECF Nos. 45, 46). The court held a telephone conference on November 16, 2011, at which time it extended the time for Defendants to oppose Plaintiffs' motion for conditional certification and denied as moot the motion to

---

[5] Plaintiffs have presumably not sought conditional certification for technicians who worked in the Capitol Heights warehouse because it closed in early 2008, a time period outside the FLSA's three-year statute of limitations.

[6] Two technicians at DirectSAT – Derrick Green and Gary Baker – have since filed consent forms seeking to opt-in as plaintiffs. (ECF Nos. 40, 51). The parties have submitted a declaration and deposition testimony from Mr. Green in support of their positions in this case. (No such information was submitted from Mr. Baker.) Mr. Green worked out of DirectSAT's warehouses in Capitol Heights, Waldorf, and Beltsville, Maryland from August 2007 through July 2010. He has stated that, while employed at these locations, he received instructions to perform work "off the clock" and to avoid recording more than forty hours per week on his timesheets. (*See generally* ECF No. 41-9, Green Decl., at 4-5).

compel Mr. Dorsey's deposition because the parties had resolved that dispute.[7]

After taking Mr. Dorsey's deposition, Defendants filed their response to Plaintiffs' motion for conditional certification. (ECF No. 54). They submitted numerous exhibits in support of their opposition and filed a motion to seal twelve of those exhibits pursuant to the confidentiality order. (ECF No. 56). Plaintiffs timely replied to Defendants' opposition. Both interim motions to seal, as well as Defendants' motion to compel discovery responses, are unopposed.

## II.  Motion for Conditional Certification and for Court-Facilitated Notice

"Under the FLSA, plaintiffs may maintain a collective action against their employer for violations under the act pursuant to 29 U.S.C. § 216(b)." *Quinteros v. Sparkle Cleaning,*

---

[7] Shortly before the telephone conference, Plaintiffs filed a letter with the court, stating that they had provided all necessary discovery responses. (ECF No. 48). Defendants' motion to compel these responses was not resolved during the telephone conference. On March 28, 2012, Defendants filed a second motion to compel discovery responses from Mr. Dorsey. In that motion, Defendants indicated that Mr. Dorsey had responded to their interrogatories and document requests in late 2011, but that he had not responded to a subsequent request regarding discrepancies between his deposition testimony and responses to document requests. (ECF No. 61). Accordingly, Defendants' original motion to compel will be denied as moot. The new motion to compel will be resolved following full briefing by the parties.

*Inc.*, 532 F.Supp.2d 762, 771 (D.Md. 2008).   Section 216(b) provides, in relevant part, as follows:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

"This provision establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit. *Quinteros*, 532 F.Supp.2d at 771 (citing *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D.Md. 2000)).

When deciding whether to certify a collective action pursuant to the FLSA, courts generally follow a two-stage process. *Syrja v. Westat, Inc.*, 756 F.Supp.2d 682, 686 (D.Md. 2010).   In the first stage, commonly referred to as the notice stage, the court makes a "threshold determination of 'whether the plaintiffs have demonstrated that potential class members are 'similarly situated,' such that court-facilitated notice to putative class members would be appropriate." *Id.* (quoting *Camper*, 200 F.R.D. at 519).   In the second stage, following the close of discovery, the court conducts a "more stringent inquiry" to determine whether the plaintiffs are in fact

"similarly situated," as required by § 216(b).   *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D.Md. 2007).   At this later stage, referred to as the decertification stage, the court makes a final decision about the propriety of proceeding as a collective action.   *Syrja*, 756 F.Supp.2d at 686 (quoting *Rawls*, 244 F.R.D. at 300).   Plaintiffs here have moved for conditional certification of a collective action and they have requested court-facilitated notice to potential opt-in plaintiffs.

### A.   Conditional Certification Is Appropriate Because Plaintiffs Have Made a "Modest Factual Showing" that Technicians in the Waldorf and Beltsville Warehouses Are "Similarly Situated"

"Determinations of the appropriateness of conditional collective action certification . . . are left to the court's discretion."   *Id.; see also Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).   The threshold issue in determining whether to exercise such discretion is whether Plaintiffs have demonstrated that potential opt-in plaintiffs are "similarly situated."   *Camper*, 200 F.R.D. at 519 (quoting 29 U.S.C. § 216(b)).   "'Similarly situated' [does] not mean 'identical.'"   *Bouthner v. Cleveland Constr., Inc.*, No. RDB-11-0244, 2012 WL 738578, at *4 (D.Md. Mar. 5, 2012) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001)).   Rather, a group of potential FLSA plaintiffs is "similarly situated" if

its members can demonstrate that they were victims of a common policy, scheme, or plan that violated the law. *Mancia v. Mayflower Textile Servs. Co.*, No. CCB-08-0273, 2008 WL 4735344, at *3 (D.Md. Oct. 14, 2008); *Quinteros*, 532 F.Supp.2d at 772. To satisfy this standard, plaintiffs generally need only make a "relatively modest factual showing" that such a common policy, scheme, or plan exists. *Marroquin v. Canales*, 236 F.R.D. 257, 259 (D.Md. 2006).

Here, Defendants assert that the court should require Plaintiffs to make a heightened showing (through use of an "intermediate standard") because the parties have completed some discovery. (ECF No. 54, at 20-22). Defendants cite several cases from other districts to support this argument, but they identify no authority for this proposition within the District of Maryland.[8]   Indeed, courts in this district have long emphasized the modest showing required for plaintiffs to obtain conditional certification. *See Rawls*, 244 F.R.D. at 300 (noting the "minimal evidentiary showing" that a plaintiff must make in

---

[8] Defendants cite *Slavinski v. Columbia Ass'n, Inc.*, No. CCB-08-890, 2011 WL 1310256 (D.Md. Mar. 30, 2011), in support of this proposition, but *Slavinski* did not employ an intermediate standard. Rather, when denying the plaintiff's motion for conditional certification, the *Slavinski* court required the plaintiff to satisfy only a "modest burden of proof." *Id.* at *4. The court ultimately concluded, however, that the plaintiff failed to satisfy this burden and denied the motion for conditional certification.

order for conditional certification of a collective action); *see also, e.g., Gionfriddo v. Jason Zink, LLC*, 769 F.Supp.2d 880, 886 (D.Md. 2011) (same); *Syrja*, 756 F.Supp.2d at 686 (describing a plaintiff's burden at the conditional certification stage as "relatively modest"); *D'Anna v. M/A-COM, Inc.*, 903 F.Supp. 889, 893 (D.Md. 1995) (same).   In fact, Judge Williams recently articulated "sound substantive reasons" for declining to impose the intermediate standard urged by Defendants here.   *Essame v. SSC Lauren Operating Co., LLC*, --- F.Supp.2d ---, 2012 WL 762895, at *5 (D.Md. Mar. 12, 2012).

> One rationale . . . is that "when the parties have engaged in only limited discovery, it is premature to conclude that the evidence is representative of what the plaintiffs would present given further discovery."   [*Helmert v. Butterball, LLC*, No. 4:08CV00324 JLH, 2009 WL 5066759, at *6 (E.D.Ark. Dec. 15, 2009] (citing *Gieseke v. First Horizon Home Loan Corp.*, 408 F.Supp.2d 1164, 1166-67 (D.Kan. 2006)).   A second justification is that "the notice stage analysis places the burden of proof on the plaintiff, but the opt-in stage analysis, which typically follows a motion to decertify, places the burden of proof on the defendant; merging the two stages of analysis would inevitably skew the burden of proof."   *Id.* (citing *Hammond v. Lowe's Home Ctrs., Inc.*, No. Civ. A. 02-2509-CM, 2005 WL 2122642, at *3 (D.Kan. Sep. 1, 2005)). . . . Another policy concern . . . [relates to] the calibration of the intermediate standard.   Although [the defendant] calls for an "intermediate" standard, [the defendant] has failed to give the Court guidance regarding the location of this

> standard between the poles that the first-
> and second-stage analyses occupy.

*Id.* The same concerns exist here and counsel against adoption of the intermediate standard espoused by Defendants. If Plaintiffs succeed in making only the "minimal evidentiary showing" required at this initial stage, *Rawls*, 244 F.R.D. at 300, their request for conditional certification of a collective action will be granted.[9]

To meet this burden and demonstrate that potential class members are "similarly situated," Plaintiffs must set forth more than "vague allegations" with "meager factual support" regarding a common policy to violate the FLSA. *D'Anna*, 903 F.Supp. at 894; *Bouthner*, 2012 WL 738578, at *4. Their evidence need not, however, enable the court to determine conclusively whether a class of "similarly situated" plaintiffs exists, *Bouthner*, 2012 WL 738578, at *4, and it need not include evidence that the company has a formal policy of refusing to pay overtime,

---

[9] Defendants' assertion that the recent opinion of the Supreme Court of the United States in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), implicates the showing Plaintiffs must make here is similarly without merit. "Because of the special policy considerations that the FLSA comprehends, Rule 23 standards [which the *Dukes* opinion addressed] are generally inapplicable to FLSA collective actions." *Essame*, 2012 WL 762895, at *6 (citing *D'Anna*, 903 F.Supp. at 892 n.2); *see also Faust v. Comcast Cable Commc'ns Mgmt., LLC*, No. WMN-10-2336, 2011 WL 5244421, at *1 n.1 (D.Md. Nov. 1, 2011) (denying a defendant's motion to file a sur-reply on the impact of *Dukes* in a collective action because *Dukes* involved class certification under Rule 23 in a sex discrimination case).

*Quinteros*, 756 F.Supp.2d at 772.    Plaintiffs may rely on "[a]ffidavits or other means," such as declarations and deposition testimony, to make the required showing. *Williams v. Long*, 585 F.Supp.2d 679, 684-85 (D.Md. 2008); *Essame*, 2012 WL 762895, at *3.

Here, through both declarations and deposition testimony, Plaintiffs have made a "modest factual showing" that they are "similarly situated" to other technicians based out of the Waldorf and Beltsville warehouses during the last three years. First, Walter Hanson, a general manager at the Capitol Heights, Waldorf, and Beltsville warehouses from 2005 through early 2010, stated in his declaration that technicians in these warehouses were all "subject[] to the same DirectSAT company policies and procedures," and that they followed "the same timekeeping policies and practices and same compensation plan." (ECF No. 59-1, Hanson Decl., at 2).   According to Mr. Hanson, DirectSAT management generally instructed technicians "not to record more than 40 hours per week on their timesheets." (*Id.* at 3).   He explained that the company president did more recently inform technicians that it was permissible to record more than forty hours per week, but only if their production rates exceeded $15 per hour.   Mr. Hanson admitted that "[t]echnicians were trained they could maintain a higher production rate by excluding time worked before arriving at their first job and time worked after

completing their last job." (*Id.* at 3). He also acknowledged that he was aware that technicians in the Waldorf and Beltsville warehouses followed these directives and performed numerous tasks, such as building satellite dishes at home, pre-calling customers, and attending weekly warehouse meetings, without receiving compensation.

Second, Mr. Butler and Mr. Green have submitted declarations attesting to the practices that Mr. Hanson described. Both assert that they worked as technicians for DirectSAT, that they were based out of the Waldorf and/or Beltsville warehouses, and that they typically worked in excess of sixty hours per week but were not compensated for all of this time. (ECF No. 41-9, at 1, 4). Additionally, Mr. Butler and Mr. Green both state that company officials directed them not to record all of the time they worked, which "meant [they] were only supposed to record the time worked from arriving on site at [their] first job until completing [their] last job of the day." (*Id.*). As a result, the company "caused" both Mr. Butler and Mr. Green "to work 'off the clock'" performing uncompensated tasks such as preparing satellite dishes at home, pre-calling customers, planning routes, and attending warehouse meetings during ten or more hours per week. (*Id.* at 2, 5). These assertions suggest that technicians in the Waldorf and Beltsville warehouses were subject to a common policy, plan, or

14

scheme that violated the FLSA.   *See Essame*, 2012 WL 762895, at
*3.

Third, deposition testimony from Mr. Butler, Mr. Dorsey,
and Mr. Green largely corroborates the above statements.   Each
testified that warehouse managers and supervisors instructed him
not to record any overtime hours on his timesheets even though
he routinely worked in excess of forty hours in a given week.
(ECF No. 41-9, at 2-5; ECF No. 54-15, at 30; ECF No. 54-16,
Green Dep., at 20; ECF No. 54-17, at 13).   Indeed, both Mr.
Dorsey and Mr. Green stated that their timesheets were returned
to them on the infrequent occasions when they tried to record
more than forty hours in a given week, with an instruction from
a project administrator to adjust the number of hours to no more
than forty.   (ECF No. 54-16, at 21; ECF No. 54-17, at 23-24).
The three technicians also testified that they were told not to
record most of the pre- and post-shift work they did at home or
at the warehouses, which Mr. Butler and Mr. Dorsey insisted that
management either strongly encouraged or directed them to
perform.   Additionally, Mr. Green – the only one of the three
still working as a technician in 2010 – stated that the company
only began permitting technicians to record overtime in 2010 in
an effort to fight off a group trying to unionize the
technicians.   Like Mr. Hanson, he emphasized that management
limited paid overtime even then to circumstances in which a

technician's production rate exceeded $15 per hour. (ECF No. 54-16, at 21). Finally, Mr. Butler, Mr. Dorsey, and Mr. Green all complained to warehouse management about these pay practices, but to no avail. (ECF No. 54-15, at 31) (warehouse manager informing technicians that "[h]is hands [were] tied and "[t]here was nothing he could do" because "[i]t's a corporate decision); (ECF No. 54-16 at 22) (warehouse manager informing Mr. Green that "it was just something that they can't do [any]thing about" and "[t]hat's what the top people are telling them to make sure [technicians] know"); (ECF No. 54-17, at 24) (managers "respond[ing]" to complaints by informing technicians that "[t]hose are the rules, follow them or work somewhere else"). Together, this evidence makes the "modest factual showing" necessary for conditional certification of a class of technicians who have worked in the Waldorf and Beltsville warehouses during the past three years.

Defendants present several counterarguments in an effort to avoid conditional certification. First, they emphasize their formal policy of paying overtime and instructing all technicians to record "all time worked for payroll and benefit purposes," (ECF No. 54, at 14), and contend that there is no evidence they employed contrary informal policies in practice. "[I]t is well-settled," however, "that the promulgation of written policies, *per se*, is insufficient to immunize an employer from conduct

that otherwise contravenes the FLSA." *Essame*, 2012 WL 762895, at *6; *see also Espenscheid v. DirectSAT USA, LLC*, No. 09-cv-625-bbc, 2010 WL 2330309, at *7 (W.D.Wis. June 7, 2010) (finding that Defendants' formal wage and hour policies, which complied with the FLSA, did not preclude conditional certification where there was evidence of an informal policy to deny overtime (citing 29 C.F.R. § 785.13)).  Additionally, contrary to Defendants' assertions, Plaintiffs have adduced evidence that a common policy existed in the Waldorf and Beltsville warehouses to suppress overtime and to have technicians perform uncompensated pre- and post-shift work.  Indeed, not only did Plaintiffs state that warehouse management instructed them not to record all of the time they worked before and after their installation jobs, they also provided a declaration from Mr. Hanson — one of those managers — largely corroborating these assertions.[10]  This evidence, which relates to practices at

---

[10] To the extent Defendants' brief suggests that Plaintiffs have not submitted a sufficient number of declarations to support conditional certification, this argument is patently without merit.  The crux of the "similarly situated" analysis is not quantitative; rather, it focuses on whether plaintiffs have demonstrated by "affidavits or other means" that a common policy, plan, or scheme to violate the FLSA exists.  *Williams*, 585 F.Supp.2d at 684-85; *see Williams v. ezStorage Corp.*, No. RDB-10-3335, 2011 WL 1539941, at *3 (D.Md. Apr. 20, 2011) (finding that a plaintiff had demonstrated that she was "similarly situated" to other potential plaintiffs based on a "single affidavit," coupled with excerpts from the defendant's employee handbook).

different warehouses during a time period that spanned from 2007 through 2010, is sufficient at this early stage to demonstrate that the instructions Plaintiffs received were not attributable solely to a "rogue supervisor." *See Faust*, 2011 WL 5244421, at *5 (concluding that the evidence produced by the plaintiffs indicated that they performed uncompensated pre- and post-shift work "under the supervision of multiple supervisors and managers, suggesting that this practice [was] not limited to just one 'rogue supervisor'"); *Espenscheid*, 2010 WL 2330309, at *7 (same).[11]

Defendants also contend that the allegations made by Mr. Butler, Mr. Dorsey, and Mr. Green are dissimilar and warrant individualized treatment. They specifically highlight differences in the time periods these three individuals worked as technicians, the manner in which they recorded time on their timesheets, and the amount of time and type of tasks they performed "off the clock." (ECF No. 54, at 28-41). This

_____

[11] The numerous cases cited by Defendants in support of this argument are, therefore, inapposite because they all involved circumstances in which no evidence existed of an informal company policy that violated the FLSA. *See, e.g.*, *Syrja*, 756 F.Supp.2d at 686-89 (concluding that the only "concrete evidence" of a national policy regarding overtime pay came from the defendant's formal policy to provide overtime compensation); *Thompson v. Speedway SuperAmerica, LLC*, No. 08-CV-1007 (PJS/RLE), 2009 WL 130069, at *1-3 (D.Minn. Jan. 20, 2009) (finding no evidence that the failure to compensate employees for certain tasks resulted from anything other than "human error or a rogue store manager").

argument, however, "delves too deeply into the merits of the dispute" at this initial notice stage. *Essame*, 2012 WL 762895, at * 4 (refusing to conclude that numerous dissimilarities in the plaintiffs' evidence counseled against granting conditional certification); *see also, e.g.*, *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 219 (E.D.Mich. 2010) ("Defendant's arguments about the predominance of individualized inquiries and dissimilarities between plaintiff and other employees are properly raised after the parties have conducted discovery and can present a more detailed factual record for the court to review."); *De Lune-Guerrero v. N.C. Growers Ass'n, Inc.*, 338 F.Supp.2d 649, 654 (E.D.N.C. 2004) ("Differences as to time actually worked, wages actually due and hours involved are . . . not significant to [the conditional certification] determination."). It also fails to recognize that "[i]ndividual circumstances are inevitably present in a collective action." *Espenscheid*, 2010 WL 2330309, at *4. To proceed as a collective action at this stage, Plaintiffs need only make "a modest factual showing" that they were victims of a common policy or practice that violated the FLSA. *Essame*, 2012 WL 762895, at *4. With declarations and deposition testimony asserting that they were instructed not to record all of their pre- and post-shift work and that they did not regularly receive overtime

compensation despite working more than forty hours per week, they have made that showing.

Defendants next argue that the court should deny Plaintiffs' request for conditional certification because Mr. Butler and Mr. Green's declarations are not credible and because Defendants have submitted an expert report, declarations, and testimony to contradict Plaintiffs' assertions. This argument is also without merit. As an initial matter, it is not clear that purported discrepancies between Mr. Butler and Mr. Green's declarations and deposition testimony are actually discrepancies at all. *See Sjoblom v. Charter Commc'ns, LLC*, 571 F.Supp.2d 961, 969-70 (W.D.Wis. 2008) (refusing to discard the plaintiffs' evidence due to inconsistencies between their declarations and deposition testimony where it appeared that the discrepancies generally resulted from the plaintiffs merely "clarifying an earlier statement"). For instance, Defendants emphasize that Mr. Butler's declaration indicates that he unloaded equipment from his company vehicle and built satellite dishes in the evening, while he initially testified in his deposition that he would return home from work and "go . . . [r]elax." (ECF No. 54, at 30) (quoting ECF No. 54-15, at 14). A full reading of Mr. Butler's testimony, however, suggests that he initially misunderstood certain questions posed by Defendants' counsel during the deposition. Mr. Butler subsequently clarified that

he did, in fact, remove some equipment from his vehicle on a daily basis and that he routinely constructed satellite dishes in the evening. (ECF No. 54-15, at 34-35).

Additionally, even if purported discrepancies did cast some doubt on Mr. Butler or Mr. Green's credibility, the court would not deny conditional certification on that basis alone because "credibility determinations are usually inappropriate for the question of conditional certification." *Essame*, 2012 WL 762895, at *3 (citing *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F.Supp.2d 200, 205 (N.D.N.Y. 2009)). Defendants' heavy reliance on Robert Crandall's expert report, as well as declarations and testimony from current technicians and managers, to discredit Plaintiffs is, therefore, unavailing. Indeed, "[t]he fact that [Plaintiffs'] allegations are disputed by . . . [D]efendants does not mean that [P]laintiffs have failed to establish a colorable basis for their claim that a class of similarly situated plaintiffs exist[s]." *Quinteros*, 532 F.Supp.2d at 772; *Essame*, 2012 WL 762895, at *3 (noting that "the court does not . . . resolve factual disputes" at the conditional certification stage (quoting *Colozzi*, 595 F.Supp.2d at 205)); *Blakes v. Illinois Bell Tel. Co.*, No. 11 CV 336, 2011 WL 2446598, at *6 (N.D.Ill. June 15, 2011) (declining to rely on the defendant's expert report when determining whether to grant conditional certification because "the purpose of the data [in the report

was] to show that Plaintiffs' declarations [were] not credible"
and "credibility [was] not an appropriate stage-one
consideration");[12] *Lewis v. Wells Fargo & Co.*, 669 F.Supp.2d
1124, 1128 (N.D.Cal. 2009) (conditionally certifying a
collective action even though the defendant had submitted fifty-
four declarations – many from current employees – that
contradicted the plaintiffs' evidence).

---

[12] In *Blakes*, the defendant wanted to use an expert report
to demonstrate that the plaintiffs, who asserted that they were
routinely denied lunch breaks, were not "similarly situated."
"[A]ccording to the report, [the plaintiffs] ha[d] all received
some overtime compensation . . . and ha[d] been tracked on a GPS
device at restaurants for more than their half-hour lunch
break." *Id.* The court reasoned, however, that the plaintiffs
had identified flaws in the report's method, which made reliance
on the report at the initial notice stage improper.

A similar conclusion is warranted here. Much like the
defendant in *Blakes*, Defendants have submitted an expert report
to demonstrate that technicians in the Waldorf and Beltsville
warehouses are not "similarly situated" because there is no
informal policy denying overtime compensation. In the report,
Crandall compares technicians' payroll hours with the hours
recorded on their vehicles' GPS devices and concludes that
differences between these two records contradict Plaintiffs'
claims. Yet as Plaintiffs point out, the tables of records that
accompany Crandall's report reveal that the GPS devices recorded
many technicians working well in excess of forty hours per week.
These hours did not, however, correspond to the hours recorded
on technicians' timesheets, which could suggest systematic
under-reporting of hours. Additionally, the principal basis of
Plaintiffs' FLSA claim is that Defendants instructed them not to
record pre- and post-shift work performed *at home*. If this
assertion is proven true, the records on which Crandall's report
relies would not have captured any of this time. Accordingly,
at this early stage, Defendants' expert report does not preclude
certification of a collective action.

Defendants also assert that certain tasks Plaintiffs performed are not generally compensable under the FLSA, thereby counseling against conditional certification. (*See* ECF No. 54, at 41-47) (contending that unloading/loading small pieces of equipment and commuting are non-compensable activities). This argument fails for two reasons. First, it goes to the merits of certain aspects of Plaintiffs' claims, which are not appropriate to resolve at the conditional certification stage. The touchstone at this stage is merely whether Plaintiffs have demonstrated some factual nexus connecting them to other potential plaintiffs as victims of an unlawful policy. *Essame*, 2012 WL 762895, at * 3 (reasoning that "the court does not weigh the merits" of the plaintiffs' claims at this early stage); *Sjoblom*, 571 F.Supp.2d at 970-71 (refusing to determine, at the conditional certification stage, whether technicians' commuting time was non-compensable because "given the right circumstances, . . . travel to and from home could be compensable"). Second, even if these limited tasks did not constitute compensable activities under the FLSA, Plaintiffs have submitted evidence that Defendants encouraged or instructed technicians to perform numerous other tasks – such as building satellite dishes and pre-calling customers - outside their installation jobs and routinely failed to pay them for this work. Defendants have not argued that these alleged acts would not violate the FLSA if

proven true.  *See Oakes v. J.F. Bernard, Inc.*, No. 5:11-cv-1006, 2011 WL 6415535, at *6 (N.D.Ohio, Nov. 22, 2011) (declining the defendants' invitation to consider whether certain pre- and post-shift work was compensable under the FLSA because there were other tasks purportedly performed that the defendants did not challenge), *report and recommendation adopted by* 2011 WL 6440876 (N.D. Ohio Dec. 21, 2011).

Defendants further argue that conditional certification is improper because Plaintiffs have not identified other employees who "actually desire to join the proposed collective action." (ECF No. 54, at 49).  They cite numerous out-of-district cases in support of this argument.  At the outset, this contention would appear to be without merit because two other technicians (Mr. Green and Mr. Baker) have sought to join this action as opt-in plaintiffs since Plaintiffs filed their motion for conditional certification.[13]  Additionally, this district has previously refused to impose a requirement that plaintiffs identify other potential opt-in plaintiffs when moving for conditional certification.  *See Mancia*, 2008 WL 4735344, at *3 n.5 (rejecting the assertion by defendants that evidence of additional potential plaintiffs was needed for conditional certification and specifically noting that out-of-district case

---

[13] The clerk will be instructed to add Mr. Green and Mr. Baker to the docket as opt-in plaintiffs.

law to the contrary "[did] not create an evidentiary standard binding on this court"); *Quinteros*, 532 F.Supp.2d at 772 n.5 (same). The court finds the reasoning of these cases persuasive and will refuse to construe the requirements for conditional certification in the narrow manner requested by Defendants. *See Quinteros*, 532 F.Supp.2d at 772 n.5.

Finally, Defendants rely heavily on a subsequent opinion from the *Espenscheid* court decertifying the nationwide class of DirectSAT technicians it had conditionally certified, contending that this opinion proves Plaintiffs will ultimately be unable to demonstrate that they are "similarly situated" to one another. (*See* ECF No. 54 at 19-20, 51-52) (discussing *Espenscheid v. DirectSAT USA LLC*, No. 09-cv-625-bbc, 2011 WL 2009967 (W.D.Wis. May 23, 2011)).[14]   This reliance is thoroughly misplaced,

_____

[14] Defendants also contend that Mr. Butler's involvement in the *Espenscheid* case renders him an inadequate representative to potential plaintiffs in this case, thus requiring the court to deny conditional certification. This argument suffers from numerous flaws and must, therefore, be rejected. First, while a handful of courts have found the adequacy of a named plaintiff to be an "equitable consideration" in determining whether to grant conditional certification, *e.g.*, *In re FedEx Ground Package Sys., Inc.*, 662 F.Supp.2d 1069, 1082 (N.D.Ind. 2009), these cases represent a minority view. Most courts articulating the requirements for conditional certification of a collective action, including courts in this district, have concluded that "[t]he FLSA . . . does not incorporate Rule 23['s] . . . adequacy criteri[on] for [conditional] certification." *Prescott v. Prudential Ins. Co.*, 729 F.Supp.2d 357, 359-60 (D.Me. 2010); *see also Summa v. Hofstra Univ.*, 715 F.Supp.2d 378, 385 (E.D.N.Y. 2010) (same); *Encinas v. J.J. Drywall Corp.*, 265

25

however, because the later *Espenscheid* opinion is distinguishable from the present case in numerous ways. As an initial matter, the standard to determine whether plaintiffs are "similarly situated" at the decertification stage is "much more stringent" than the standard applicable to the initial notice stage of a collective action. *White v. MPW Indust. Servs., Inc.*, 236 F.R.D. 363, 367 (E.D.Tenn. 2006). Accepting

---

F.R.D. 3, 6 (D.D.C. Mar. 8, 2010) (same); *Mancia*, 2008 WL 4735344, at *2 (same); *Robinson v. Empire Equity Grp., Inc.*, 2009 WL 4018560, at *1 n.8 (D.Md. Nov. 18, 2009) (same).

Yet even if the court found Mr. Butler's adequacy as a named plaintiff to be an "equitable consideration" at this stage, the action would nonetheless proceed. When the *FedEx Ground* court declined to grant conditional certification due to inadequacy of the named plaintiffs, it did so only after first concluding that *neither* of the original named plaintiffs was adequate. 662 F.Supp.2d at 1082. Defendants have asserted that Mr. Butler is an inadequate representative, but they make no such assertion with regard to Mr. Dorsey.

Defendants' asserted reasons for Mr. Butler's purported inadequacy are also unpersuasive. The *Espenscheid* court may have concluded that the members of a *nationwide* class of DirectSAT technicians were not "similarly situated" to one another, but it made no findings regarding whether Mr. Butler is "similarly situated" to the putative class at issue here. In addition, even if – as Defendants contend – Mr. Butler is collaterally estopped from pursuing compensation for a limited number of pre- and post-shift tasks by the *Espenscheid* summary judgment ruling, there are numerous other forms of pre- and post-shift work that Mr. Butler alleges he performed without compensation. Finally, the fact that Mr. Butler was employed during a different time period than Mr. Green and Mr. Dorsey and that his claims would require a three-year limitations period go to individualized inquiries and merits considerations that are inappropriate at this stage of the case. *See Essame*, 2012 WL 762895, at *3.

Defendants' argument that the *Espenscheid* decertification somehow mandates denial of Plaintiffs' motion for conditional certification would essentially hold Plaintiffs to the burden employed at the second stage of certification proceedings, a result that would contravene the broad remedial policies underlying the FLSA. *Lewis*, 669 F.Supp.2d at 1128.

Setting aside the distinct procedural postures of the cases, Defendants also fail to appreciate critical factual differences between *Espenscheid* and the present action. *Espenscheid* involved a nationwide class of more than 1,000 DirectSAT technicians, while this case involves technicians at only two DirectSAT warehouses in Maryland. In decertifying the collective action, the *Espenscheid* court emphasized the plaintiffs' repeated failure to submit a satisfactory trial plan addressing certain technician subclasses that the court had imposed following conditional certification. It also expressly noted that the record – which the parties had developed during subsequent discovery – demonstrated that the nationwide class of technicians had not in fact experienced uniform circumstances. Defendants invite the court to conclude that the same problems would necessarily result here, but doing so at this time would be speculative at best. Accordingly, the *Espenscheid* decertification does not counsel against granting the conditional certification sought by Plaintiffs in this case.

In the end, despite Defendants' vigorous assertions to the contrary, the evidence presented by Plaintiffs is sufficient to make the "minimal evidentiary showing" that a common policy or scheme to violate the FLSA existed in Defendants' Waldorf and Beltsville warehouses. *Rawls*, 244 F.R.D. at 300. This conclusion is in line with numerous cases in this district and throughout the country that have conditionally certified collective actions based on analogous circumstances. *See, e.g.*, *Essame*, 2012 WL 762895, at *3-4 (granting conditional certification where the plaintiffs presented testimony from one of the defendant's former staffing coordinators about eliminating overtime and submitted declarations that the defendant required them to work through their unpaid meal breaks); *Faust*, 2011 WL 5244421, at *5 (finding that the plaintiffs had made the "modest factual showing" necessary regarding an unlawful compensation policy by submitting evidence that they were "encouraged to work off the clock, [were] in fact working of the clock with their supervisor's knowledge, and [were] not being properly compensated for that time"); *Espenscheid*, 2010 WL 2330309, at *7-8 (conditionally certifying a nationwide class of technicians where the plaintiffs submitted affidavits from several putative class members that the defendants did not compensate them for overtime involving pre- and post-shift work and affidavits from company managers

acknowledging this practice); *Kautsch v. Premier Commc'ns*, 504 F.Supp.2d 685, 689 (W.D.Mo. 2007) (concluding that the plaintiffs, who were field service technicians, had made "a modest factual showing" that they were "similarly situated" by submitting affidavits and deposition testimony indicating that their managers directed them not to record overtime and prohibited them from recording time spent on several non-production tasks). Conditional certification pursuant to § 216(b) is, therefore, warranted for the technicians who have worked out of Defendants' Waldorf and Beltsville warehouses during the past three years.

**B. Court-Facilitated Notice to Potential Opt-in Plaintiffs Is Proper**

Because Plaintiffs have made a preliminary showing that technicians in the Waldorf and Beltsville warehouses are "similarly situated," notice of this action will be provided to technicians who currently work, or have worked in the past three years, out of these two locations. Plaintiffs have submitted a proposed notice form that they contend is "fair and adequate." (ECF No. 41, at 10). They request to send this notice by first-class mail and by email. They also ask that the court give potential opt-in plaintiffs ninety days from the date the notice is mailed to determine whether to join the collective action. Defendants oppose the form of the notice, the request to send

notice via email, and the ninety-day opt-in period requested by Plaintiffs.   Plaintiffs have not responded to any of these objections.

The district court has broad discretion regarding the "details" of the notice sent to potential opt-in plaintiffs. *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202 (S.D.N.Y. 2006) (citing *Hoffmann-La Roche*, 493 U.S. at 171).   "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide 'accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate.'"  *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F.Supp.2d 445, 450 (S.D.N.Y. 2011) (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317, 323 (S.D.N.Y. 2007)).   Defendants have asserted that Plaintiffs' notice is deficient because it fails to assert Defendants' position in the lawsuit and to advise potential plaintiffs adequately about the right to join this suit with their own attorney and the possibility of having to participate in the discovery process and the trial.   (ECF No. 54, at 54-55).   These assertions are persuasive, particularly given Plaintiffs' lack of opposition. *See, e.g.*, *Wass v. NPC Int'l, Inc.*, No. 09-2254-JWL, 2011 WL 1118774, at *10 (D.Kan. Mar. 28, 2011) (requiring the plaintiffs to amend a notice to include a statement about the defendant's

position); *Whitehorn*, 767 F.Supp.2d at 450-51 (requiring amendment of proposed notice to inform potential opt-in plaintiffs "of the possibility that they will be required to participate in discovery and testify at trial" and "to state that participating plaintiffs may retain their own counsel").[15] Accordingly, the court will modify the proposed notice to potential class members to correct these deficiencies.[16]

Defendants' requests to shorten the opt-in period and to prevent Plaintiffs from notifying potential plaintiffs via email will be denied. With regard to the length of the opt-in period, Defendants' concern that a ninety-day period would result in "a never-ending certification process" is unwarranted. (ECF No. 54, at 56) (internal quotation marks omitted). Notice periods may vary, but numerous courts around the country have authorized ninety day opt-in periods for collective actions. *See, e.g.*, *Wass*, 2011 WL 1118774, at *11 (denying the defendant's request to shorten the opt-in period below ninety days); *Calderon v.*

---

[15] Plaintiffs have also requested that the court appoint their counsel as counsel for this collective action. Defendants have not opposed this request. Thus, any potential opt-in plaintiff who does not enter an appearance through his own counsel, or indicate a desire to represent himself, will be represented by Plaintiffs' counsel.

[16] Pursuant to Plaintiffs' motion papers, the court will also clarify the scope of the collective action to make clear that it covers only technicians who worked out of the Waldorf or Beltsville warehouses during the past three years.

*Geico Gen. Ins. Co.*, No. RWT 10cv1958, 2011 WL 98197, at *2, 8-9 (D.Md. Jan. 12, 2011) (authorizing a ninety-day notice period); *Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 68-69 (E.D.Pa. 2009) (finding a ninety-day opt-in period to be reasonable). There is no sound reason not to do so here. With regard to the use of email to notify potential plaintiffs of this litigation, "communication through email is [now] the norm." *In re Deloitte & Touche, LLP Overtime Litig.*, 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012). Indeed, notice by email may be particularly appropriate in this case because the potential plaintiffs are technicians who are "likely to be . . . comfortable communicating by email." *Lewis*, 669 F.Supp.2d at 1128-29 (permitting notice by first-class mail and email for a class of technical support workers). Plaintiffs may, therefore, notify other potential plaintiffs of this action by first-class mail and by email using the court-approved notice appended to this memorandum opinion.[17]

---

[17] To effectuate this notice, Defendants will be required to produce a file containing the full names and last known home and email addresses of potential opt-in plaintiffs within fourteen days of the issuance of the accompanying Order. Defendants will not, however, be required to provide phone numbers for potential opt-in plaintiffs at this time because Plaintiffs have made no showing of any "special need" for the disclosure of this information. *See Calderon*, 2011 WL 98197, at *9 ("[A]bsent a showing by plaintiffs of 'special need for disclosure of class members' telephone numbers,' ordering such disclosure is not

## III. Motions to Seal

Both parties have also filed unopposed motions to seal.  A motion to seal must comply with Local Rule 105.11, which provides:

> Any motion seeking the sealing of pleadings, motions, exhibits or other papers to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protections.  The Court will not rule upon the motion until at least 14 days after it is entered on the public docket to permit the filing of objections by interested parties.  Materials that are the subject of the motion shall remain temporarily sealed pending a ruling by the Court.  If the motion is denied, the party making the filing will be given an opportunity to withdraw the materials.

This rule endeavors to protect the common law right to inspect and copy judicial records and documents, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), while recognizing that competing interests sometimes outweigh the public's right of access, *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

Before sealing any documents, the court must provide the non-moving party with notice of the request to seal and an opportunity to object.  *Id.*  This notice requirement may be

---

appropriate." (quoting *Arevalo v. D.J.'s Underground*, No. DKC 09-3199, 2010 WL 4026112, at *2 (D.Md. Oct. 13, 2010))).

satisfied by either notifying the persons present in the courtroom or by docketing the motion "reasonably in advance of deciding the issue." *Id.* at 234.   Finally, the court should consider less drastic alternatives to sealing, such as filing redacted versions of the documents.   If the court decides that sealing is appropriate, it should also provide reasons, supported by specific factual findings, for its decision to seal and for rejecting alternatives. *Id.* at 235.

The parties seek to seal certain exhibits in connection with their motion papers addressing conditional certification and court-facilitated notice.   These exhibits, produced pursuant to a court-approved confidentiality order, include Defendants' employee handbooks and policy manual, payroll and other personnel records for Defendants' employees, a document signed by Mr. Butler acknowledging receipt of the employee handbook, a document explaining Defendants' piece-rate compensation system, and an expert report concluding that Defendants did not employ an informal policy against payment of overtime.   With regard to Defendants' employee handbooks, policy manual, and personnel records, the "confidential" designation would not seem to be without basis.   Indeed, Defendants emphasize that these exhibits contain proprietary business information and sensitive personnel records.   Thus, the exhibits containing these items or excerpts

thereof will be sealed.[18]  *See Pittston Co. v. United States*, 368 F.3d 385, 406 (4th Cir. 2004) (affirming decision to seal certain "confidential, proprietary, commercial, or financial data" that was produced under a protective order); *see also Jarvis v. FedEx Office & Print Servs., Inc.*, No. DKC-08-1694, 2011 WL 826796, at * 10 (D.Md. Mar. 7, 2011) (sealing an exhibit containing excerpts of an employee handbook), *aff'd*, 442 F.App'x 72 (4th Cir. 2011), *cert. dismissed*, 132 S.Ct. 1018 (2012); *Young v. United Parcel Serv., Inc.*, No. DKC-08-2586, 2011 WL 665321, at *22 (D.Md. Feb. 14, 2011) (sealing exhibits containing "both personal employee information and certain sensitive corporate data").[19]

The parties' requests to seal the remaining exhibits will be denied.[20]  There is no indication in their motion papers that Mr. Butler's signed acknowledgment regarding receipt of the

---

[18]  In their motion to seal, Plaintiffs state only that they seek to seal the exhibits pursuant to the confidentiality order, an explanation insufficient to satisfy the "specific factual representations" that Local Rule 105.11 requires.  *Sensormatic Sec. Corp. v. Sensormatic Elec. Corp.*, 455 F.Supp.2d 399, 438 (D.Md. 2006).  However, as the same or similar exhibits submitted by Defendants will be sealed because they contain proprietary business information, so too will Plaintiffs' exhibits containing employee handbook or policy manual excerpts.

[19]  These exhibits are:  ECF Nos. 42-2, 42-3, 42-4, 54-1, 54-2, 54-3, 54-4, 54-5, 54-6, 54-7, 54-8, and 54-10.

[20]  These exhibits are:  ECF Nos. 42-1, 54-9, 54-11, and 54-12.

employee handbook and the expert report reveal any proprietary business data or sensitive employee information, which appears to be the asserted basis for sealing.[21]   Additionally, the exhibit Defendants seek to seal addressing piece-rate calculations was discussed at length in Defendants' opposition, and it is virtually identical to another exhibit submitted by Defendants.   Neither Defendants' opposition nor this other exhibit was filed under seal.   The parties will be given fourteen days to withdraw these exhibits from the record.   If they choose not to do so, the exhibits will be unsealed after that time.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for conditional certification and for court-facilitated notice will be granted in part and denied in part, as will both parties' motions to seal.   A separate Order will follow.

_____
             /s/
_____
DEBORAH K. CHASANOW
United States District Judge

_____

[21] Defendants' expert report is partially based on the employee payroll records submitted with their opposition papers, but the report does not discuss those records in any detail. Rather, the expert report merely presents a high-level summary of the total hours listed on employee timesheets.   Defendants' opposition papers, which they have not moved to file under seal, also quote extensively from this report.