IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

                                    :

JEFFRY BUTLER, ET AL.

                                    :

      v.                            :    Civil Action No. DKC 10-2747

                                    :

DIRECTSAT USA, LLC, ET AL.

                                    :

**MEMORANDUM OPINION**

This collective action was brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by Plaintiff Jeffry Butler ("Butler") against Defendants DirectSAT USA, LLC ("DirectSAT"), UniTek USA, LLC ("UniTek"), and UniTek Global Services, Inc. ("UGS") (collectively "Defendants"). DirectSAT is a subsidiary of UniTek and UGS, and provides satellite installation services to DirecTV customers throughout the country. Butler is a technician who previously installed, upgraded, and serviced DirecTV equipment at customer locations in Maryland, Virginia, and the District of Columbia. Butler brought this suit against Defendants for their alleged failure to pay overtime wages in violation of the FLSA and various state wage laws. As to the FLSA claim, Butler sought to represent a collective of all technicians employed by Defendants in Virginia, Maryland, and the District of Columbia. Conditional certification of the FLSA collective was granted on April 10,

2012.   (ECF Nos. 65 and 66).   Defendants filed a motion to decertify the collective on February 3, 2014, which was denied on September 18, 2014.   (ECF Nos. 278 and 279).   The collective presently consists of named Plaintiff Butler and twenty-five opt-in Plaintiffs (collectively "Plaintiffs").[1]   On May 12, 2014, Defendants moved for summary judgment, which was granted in part and denied in part on October 16, 2014.   (ECF Nos. 301 and 302). Shortly after issuance of the summary judgment opinion, this case was administratively closed because Defendants filed a notice of suggestion of bankruptcy.   (ECF Nos. 311 and 312).

On March 17, 2015, Plaintiffs filed a motion to lift the bankruptcy stay, which is currently pending before the court. (ECF No. 315).   Also pending and ready for resolution in this action are several motions that were filed prior to the administrative closing of this case, namely:   (1) a motion for reconsideration of the July 6, 2011 order that dismissed Plaintiffs' Maryland Wage Payment and Collection Law ("MWPCL") claim (ECF No. 275); (2) a motion filed by Defendants for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) of the undersigned's September 18, 2014 order denying decertification (ECF No. 298); (3) a motion to set a trial date

---

[1] This memorandum opinion includes only the facts relevant to the disposition of the presently pending motions.   A full procedural history and factual description of the dispute between the parties can be found in previous opinions. (ECF Nos. 28, 65, 190, 278, and 301).

filed by Plaintiffs (ECF No. 310); and (4) several renewed motions to seal various exhibits that were filed in conjunction with the parties' decertification and summary judgment motions (ECF Nos. 280, 299, 303, and 309). The issues have been briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Plaintiffs' motion to lift the bankruptcy stay and reopen this case will be granted. Plaintiffs' motion for reconsideration of Butler's MWPCL claim and their motion to set a trial date will be granted. Defendants' motion for certification will be denied. Finally, the renewed motions to seal will be granted in part and denied in part.

## I.   Motion to Lift Bankruptcy Stay

Defendants filed a suggestion of bankruptcy on November 13, 2014, advising that UGS and "its affiliated debtors and debtors in possession" had filed a Chapter 11 petition and that the instant case was subject to an automatic bankruptcy stay pursuant to 11 U.S.C. § 362(a). (ECF No. 311). On the same date, the court issued an order administratively closing this case without prejudice to Plaintiffs' right to reopen it upon a showing of good cause. (ECF No. 312).

On March 17, 2015, Plaintiffs filed a "motion to lift the stay," in which they indicate that the bankruptcy court handling Defendants' Chapter 11 proceeding issued a confirmation order

and plan of reorganization on January 5, 2015.  (ECF No. 315).

Plaintiffs note that pursuant to the bankruptcy judge's order,

the bankruptcy stay was lifted in this litigation as of the

effective date of the reorganization plan, which was January 13,

2015, and Plaintiffs were granted permission to continue

litigating their claims against Defendants.  (ECF No. 315-1, at

58-61).  Defendants did not respond to this motion, however,

they had previously filed a notification on January 15, 2015,

indicating that the Bankruptcy Court had confirmed their Chapter

11 plan of reorganization.

When a debtor files for bankruptcy protection, 11 U.S.C. §

362(a)(1) automatically stays "the commencement or continuation

. . . of a judicial, administrative, or other action or

proceeding against the debtor that was . . . commenced before

the commencement of the case under this title."  The "chief

purpose" of the automatic stay provision is "to allow for a

systematic, equitable liquidation proceeding by avoiding a

'chaotic and uncontrolled scramble for the debtor's assets in a

variety of uncoordinated proceedings in different courts.'"

*Safety-Kleen, Inc. v. Wyche,* 274 F.3d 846, 864 (4th Cir. 2001)

(*quoting Fidelity Mortgage Investors v. Camelia Builders, Inc.,*

550 F.2d 47, 55 (2d Cir. 1976)).  "Relief from the stay can be

granted only by the bankruptcy court having jurisdiction over a

debtor's case."  *Constitution Bank v. Tubbs,* 68 F.3d 685, 691 (3d

Cir. 1995).  "Unless relief from the stay is granted, the stay continues until the bankruptcy case is dismissed or closed, or discharge [of the debtor's debts] is granted or denied." *Id.* at 691-92 (*citing* 11 U.S.C. § 362(c)).   In Chapter 11 bankruptcy proceedings,  the  bankruptcy  court's  confirmation  of  the  plan "discharges the debtor from any [dischargeable] debt[,]" unless otherwise provided for in the plan of reorganization.  11 U.S.C. § 1141(d)(1); *see also U.S. v. White,* 466 F.3d 1241, 1245-46 & 1245 nn.7-8 (11th Cir. 2006) (*citing* 11 U.S.C. §§ 362(c)(2) and 1141(d)(1)).

Here, the bankruptcy court confirmed Defendants' Chapter 11 Plan of reorganization on January 5, 2015.  In his confirmation order,  the  bankruptcy  judge  specifically  addressed  the Plaintiffs' current suit:

> With respect to the plaintiffs [] and any members or putative members of any class or subclass [] in the following litigations [including] Butler, et al v. DirectSat, USA, LLC, et al., 10 cv 2747 (District of Maryland)[,] [] any stay or injunction imposed by this Confirmation Order, the Plan or any other Order of the Bankruptcy Court, as applicable, is immediately removed as of the Effective Date of the Plan and is lifted in order to permit Plaintiffs and all other parties to fully litigate their Claims and the Claims of the Class members[.]

(ECF No. 315-1 ¶ 72).  Defendants' reorganization plan became effective January 13, 2015, which lifted the bankruptcy stay.

(ECF Nos. 313, 313-1, and 315).   Accordingly, Plaintiffs' motion will be granted and this case will be reopened.

## II.   Motion for Reconsideration

Plaintiffs move for reconsideration of the undersigned's July 6, 2011 memorandum opinion and order (ECF Nos. 28 and 29), which dismissed their Maryland Wage Payment and Collection Law ("MWPCL") claim (count III) based on "an intervening change in controlling law."   (ECF No. 275).   The July 6, 2011 opinion dismissed Plaintiffs' claim based on the understanding that "[t]he MWPCL does not specifically address payment of overtime wages or provide a cause of action directed at employer's failure to pay overtime."   (ECF No. 28, at 16).   The opinion specifically notes that "other judges in this district have rejected plaintiffs' attempts to state claims for violation of the MWPCL where [like here] the parties' core dispute is whether plaintiffs were entitled to overtime wages at all and not whether overtime wages were paid on a regular basis or upon termination."   (*Id.*).

Plaintiffs assert that the dismissal of their MWPCL claim was based on the improper determination that Plaintiffs' claim for overtime wages did not fall within the scope of the MWPCL. Plaintiffs point out that after the court issued its July 6, 2011 decision, the Court of Appeals of Maryland reached a different conclusion in *Peters v. Early Healthcare Giver, Inc.,*

6

439 Md. 646 (2014), finding that the MWPCL does provide a vehicle for recovering unpaid overtime wages.

In response, Defendants argue that Plaintiffs' motion for reconsideration of their MWPCL claim must be denied because it relies upon the same argument that was previously rejected at the motion to dismiss stage — that the 2010 Amendment to the MWPCL made explicit that unpaid overtime wage claims were recoverable under the MWPCL.  In addition, Defendants argue that Plaintiffs' MWPCL claim was dismissed in 2011 because of pleading deficiencies that are equally present today. Defendants add that "even if [] *Peters* finally resolves the question of whether the 2010 amendments to the MWPCL provide a private right of action for allegedly unpaid overtime, said amendments have no bearing" on this case because they were enacted after the only remaining named Plaintiff, Jeffry Butler, was no longer employed by DirectSat.  (ECF No. 277, at 2-3). Defendants argue that neither the 2010 Amendments to the MWPCL nor the *Peter* court's interpretation of the same were intended to apply retroactively and therefore, should not be applied to Butler whose employment with Defendants ended in 2008.

Because Plaintiffs seek reconsideration of a non-final, interlocutory order, their motion is properly analyzed under Fed.R.Civ.P. 54(b).  *See* Fed.R.Civ.P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than

7

all the claims or the rights and liabilities of fewer than all the parties does not end the action . . . and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). The precise standard governing a motion for reconsideration of an interlocutory order is unclear. Although the standards articulated in Rules 59(e) and 60(b) are not binding in an analysis of Rule 54(b) motions, *see Am. Canoe Ass'n v. Murphy Farms, Inc.,* 326 F.3d 504, 514 (4th Cir. 2003), courts frequently look to these standards for guidance in considering such motions, *see Cohens v. Md. Dep't of Human Res.,* 933 F.Supp.2d 735, 741 (D.Md. 2013). Under Rule 59(e), a motion to alter or amend a final judgment may be granted only "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir. 1998). Under Rule 60(b), a court may grant relief from a judgment or order for: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief. Fed.R.Civ.P. 60(b).

Judge Hazel recently discussed in *Chavez v. Besies Corp.,* No. GJH-14-1338, 2014 WL 5298032, at *2-3 (D.Md. Oct. 10, 2014),

the scope of the MWPCL as clarified by the Court of Appeals of
Maryland in two opinions it issued in 2014:

> "[I]t is well-settled that the federal
> courts are bound by the interpretation
> placed on state statutes by the highest
> courts of the state." *Wetzel v. Edwards,*
> 635 F.2d 283, 289 (4th Cir. 1980). With that
> understanding, this Court turns to a recent
> decision where the Maryland Court of Appeals
> addressed the issue raised by Defendant.
> *Marshall v. Safeway,* 437 Md. 542, 88 A.3d
> 735 (Md. 2014). There, the Maryland Court
> of Appeals found that the MWPCL generally
> provides an employee with a cause of action
> against an employer, not just for the
> failure to pay wages on time, but also for
> "the refusal of employers to pay wages
> lawfully due." *Id.* at 561–62, 88 A.3d at
> 746. In explaining the MWPCL, Maryland's
> highest court stated, "what the timing
> relates to is what must be paid — all
> compensation that is due." *Id.* at 560, 88
> A.3d. at 745. The Maryland Court of Appeals
> reasoned that unlawfully withholding any
> part of a wage violates the MWPCL's
> provision that wages must be paid on time.
> *Id.*
>
> . . . .
>
> Moreover, in August of this year, the
> Maryland Court of Appeals reiterated the
> reach of the MWPCL in *Peters v. Early
> Healthcare Giver, Inc.,* 439 Md. 646, 97 A.3d
> 621 (Md. 2014). There, the Court of Appeals
> explained:
>
> > Maryland has two wage enforcement
> > laws . . . the [M]WHL and the
> > [M]WPCL. The [M]WHL aims to
> > protect Maryland workers by
> > providing a minimum wage standard.
> > The [M]WPCL requires an employer
> > to pay its employees regularly
> > while employed, and in full at the

> termination of employment. Read
> together, these statutes allow
> employees to recover unlawfully
> withheld wages from their
> employer, and provide an employee
> two avenues to do so.

*Id.* at 646, 97 A.3d at 624–25.

In light of the Court of Appeals of Maryland's clarifications in *Marshall* and *Peters* as to the scope of the MWPCL, Plaintiff Butler's MWPCL claim will be reinstated. The pleading deficiencies that were identified in 2011 were based on a misunderstanding of the scope of the law. Defendants' argument that the "change in the law" articulated in *Peters* does not apply to Butler because he was only employed by Defendants until July 2008 and there is a presumption against retroactive application of the MWPCL 2010 Amendment will be rejected for several reasons. As explained by the Court of Appeals of Maryland in *Marshall* and *Peters*, the scope of the MWPCL was always intended to provide employees a basis for recovering any unpaid wages they were entitled to and was not meant to be restricted to recovering wage payments when they were untimely. *Marshall,* 437 Md. at 556–62; *Peters,* 439 Md. at 653–55. The court further articulated in *Peters* that it had been called upon to clarify the scope of the MWPCL "in the face of federal court decisions that continued to restrict its application." 439 Md. at 654 (*citing McLaughlin v. Murphy,* 372 F.Supp.2d 465 (D.Md.

10

2004); *Williams v. Maryland Office Relocators,* 485 F.Supp.2d
616, 622 n.4 (D.Md. 2007).[2]   The 2010 Amendment to the MWPCL,
which added "overtime wages" to the statute's definition of
"wages," did not change the law; rather, it was passed to
provide clarification of the intended scope of the MWPCL, which
previously had been misconstrued.   The presumption against
retroactivity is therefore inapplicable to Butler's MWPCL claim
for overtime pay because the MWPCL was all along intended to
provide a private cause of action for unpaid overtime wages,

---

[2] Specifically, the court noted that:

> In response to [the federal district
> court's] decisions, the Legislature amended
> the WPCL by adding "overtime wages" to the
> statute's definition of "wages" for the sole
> purpose of "correct[ing] . . . . [t]he 2004
> holding in *McLaughlin v. Murphy* and the 2007
> holding in *Williams v. Maryland Office
> Relocators, Inc.* [that] misinterpreted our
> state law to say that Marylanders who are
> owed overtime cannot seek the full damages
> they are owed from employers who fail to
> properly pay them overtime." *See* Del.
> Josephine A. Peña-Melnyk, Testimony on House
> Bill 214 (House Econ. Matters Comm. Feb. 18,
> 2010 and Sen. Fin. Comm. April 1, 2010); *see
> also* 2010 Md. Laws, ch. 99 (S.B. 694); 2010
> Md. Laws, ch. 100 (H.B. 214) (hereinafter
> "2010 Amendment").

*Id.* at 654 n.7.

including during Butler's employment as a DirectSat technician from October 2007 until July 2008.[3]

## III. Motion for Certification of an Interlocutory Appeal

### A.    Background

Following the close of discovery, Defendants filed a motion to decertify Plaintiffs' conditionally certified collective on the grounds that the Plaintiffs were not similarly situated and should not be permitted to proceed as a collective.  (ECF No. 202).    On  September  18,  2014,  Defendants'  motion  for decertification  was  denied.    (ECF  Nos.  278  and  279).    As explained in the September 18, 2014 opinion, in the second and final stage of the certification process:

> the "court engages in a more stringent
> inquiry to determine whether the plaintiff
> class is [in fact] 'similarly situated' in
> accordance with the requirements of
> [Section] 216, and renders a final decision
> regarding the propriety of proceeding as a
> collective action." *Dorsey v. TGT
> Consulting, LLC,* 888 F.Supp.2d 670, 686
> (D.Md. 2012) (*quoting Syrja* [*v. Westat,
> Inc.,* 756 F.Supp.2d 682, 686 (D.Md. 2010)].
> Generally, "plaintiffs bear the burden of
> showing that their claims are 'similarly
> situated,'" and "district courts have broad
> discretion to determine whether a collective
> action is an appropriate means for
> prosecuting an FLSA cause of action."
> *Gionfriddo v. Jason Zink, LLC,* 769 F.Supp.2d
> 880, 886 (D.Md. 2011) (citation omitted).

---

[3]    Indeed,  the  plaintiff  in  *Peters*  sought  and  received overtime wages for work performed during a similar time period of April 2008 to April 2009 that preceded the 2010 Amendment. 439 Md. at 650.

> "In considering a motion to decertify
> alleging dissimilarity of the plaintiff
> class, courts have considered three factors:
> (1) the disparate factual and employment
> settings of the individual plaintiffs; (2)
> the various defenses available to defendant
> which appear to be individual to each
> plaintiff; and (3) fairness and procedural
> considerations." *Rawls v. Augustine Home
> Health Care, Inc.,* 244 F.R.D. 298, 300
> (D.Md. 2007). "Similarly situated" does not
> mean "identical," however. *Gionfriddo,* 769
> F.Supp.2d at 886 (*citing Hipp v. Liberty
> Nat'l Life Ins. Co.,* 252 F.3d 1208, 1217
> (11th Cir. 2001)).

(ECF No. 278, at 6-7) (first and second alterations in
original). After reviewing the evidence presented by the
parties, the undersigned found that although "[t]here [were]
certainly differences among the technicians, [] they [were] not
so great to defeat the collective mechanism." (*Id.* at 20). In
addition, the undersigned acknowledged that the differences
among technicians related more to their individual damages
assessments than to establishing liability, and that
representative proof could be used to show whether Defendants in
fact had policies in place requiring Plaintiffs to perform
compensable tasks outside of their compensable hours. The
opinion notes that:

> Going forward, this case will be divided
> into two stages: liability and damages. The
> liability phase will focus on whether: (1)
> the collective performed overtime hours
> without compensation; (2) those worked hours
> were compensable under the FLSA or, rather,
> were *de minimis* or preliminary or

> postliminary to a principal activity; (3) if
> compensable, Defendants knew or should have
> known that the collective worked overtime
> but failed to compensate them for it; and
> (4) any other defenses raised by Defendants.
> If liability is found as to one or more of
> the eligible tasks, the case will proceed to
> phase two: damages.

(*Id.* at 27-28).  As for the damages phase, the undersigned foresaw that in all likelihood each "Plaintiff will need to submit a damages calculation, subject to challenge by Defendants.  While this phase could lead to in essence twenty-six mini-trials on the question of damages, it would still be more efficient than having twenty-six mini-trials on damages *and* liability."  (*Id.* at 28).

On September 26, 2014, Defendants moved to amend and certify the September 18, 2014 opinion and order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  (ECF No. 298).  The motion is fully briefed.  (ECF Nos. 300 and 308).  Defendants request that the court certify the following questions for immediate interlocutory review:

> 1.  Whether a FLSA collective action can
> remain certified for trial without
> Plaintiffs identifying and establishing the
> representativeness of intended proof for
> either liability or damages, and where the
> Court must conduct "mini-trial" for each and
> every member of the collective to ascertain
> damages.
>
> 2.  Whether proceedings in [a] certified
> FLSA collective action can be bifurcated
> where liability and damages for an

14

> individual's    claim    are    inextricably
> intertwined and interwoven.

(ECF No. 298).

### B.   Analysis

"[Section] 1292(b) provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals." *In re Cement Antitrust Litig.,* 673 F.2d 1020, 1026 (9th Cir. 1982).  Section 1292(b) states in pertinent part:

> When a district judge, in making in a civil action
> an  order  not  otherwise  appealable  under  this
> section,  shall  be  of  the  opinion  that  such  order
> involves  a  controlling  question  of  law  as  to  which
> there  is  substantial  ground  for  difference  of
> opinion  and  that  an  immediate  appeal  from  the  order
> may  materially  advance  the  ultimate  termination  of
> the  litigation,  he  shall  so  state  in  writing  in  such
> order.

Thus, a defendant seeking an interlocutory appeal pursuant to section 1292(b) must "show (1) that a controlling question of law exists (2) about which there is a substantial basis for difference of opinion and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Riley v. Dow Corning Corp.,* 876 F.Supp. 728, 731 (M.D.N.C. 1992).  The decision to certify an interlocutory appeal is firmly in the district court's discretion.  *Id.* Unless *all* of the statutory criteria are satisfied, however, "the district court may not and should not certify its order

. . . for an immediate appeal under section 1292(b)." *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.,* 219 F.3d 674, 676 (7th Cir. 2000); *see also Riley,* 876 F.Supp. at 731 (stating that Section 1292(b) "requires strict adherence to all statutory requirements before certification will be allowed").   Moreover, the United States Court of Appeals for the Fourth Circuit has cautioned that "[section] 1292(b) should be used sparingly and . . . that its requirements must be strictly construed." *Myles v. Laffitte,* 881 F.2d 125, 127 (4th Cir. 1989); *see also Riley,* 876 F.Supp. at 731 ("The legislative history of [Section 1292(b)] suggests that there is a strong federal policy against piecemeal appeals."); *Beck v. Commc'ns Workers of Am.,* 468 F.Supp. 93, 95–96 (D.Md. 1979) ("Section 1292(b), a narrow exception to the long-standing rule against piecemeal appeals, is limited to exceptional cases.").   Certification under section 1292(b) is improper if it is simply "to provide early review of difficult rulings in hard cases." *City of Charleston, S.C. v. Hotels.com, LP,* 586 F.Supp.2d 538, 548 (D.S.C. 2008).

The term "question of law" for purposes of section 1292(b), refers to "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine," *Lynn v. Monarch Recovery Mgmt., Inc.,* 953 F.Supp.2d 612, 623 (D.Md. 2013), as opposed to "questions of law heavily freighted with the necessity for factual assessment." *Fannin v. CSX*

*Transp., Inc.,* 873 F.2d 1438, at *5 (4th Cir. 1989) (unpublished
table decision).   "Such 'questions of law' have usually been
thought not the kind of 'controlling' question proper for
interlocutory review under § 1292(b)[,]" because they "inflict[]
upon courts of appeals an unaccustomed and illsuited role as
factfinders."   *Id.; see also In re Text Messaging Antitrust
Litig.,* 630 F.3d 622, 626 (7th Cir. 2010) ("[A] pure question of
law [is] something the court of appeals could decide quickly and
cleanly without having to study the record[.]").   Rather, a
"controlling question of law" applies to a "narrow question of
pure law whose resolution would be completely dispositive of the
litigation, either as a legal or practical matter."   *Fannin,* 873
F.2d at *5.   Moreover, "[a] controlling question of law
[includes] every order [that], if erroneous, would be reversible
error on final appeal."   *Lynn,* 953 F.Supp.2d at 623 (*quoting
Katz v. Carte Blanche Corp.,* 496 F.2d 747, 755 (3[d] Cir. 1974)).

Defendants argue that this motion for certification of an
interlocutory appeal presents multiple controlling questions of
law because the court's certification decision turned on:

> an express rejection of multiple legal
> conclusions adopted by the Seventh Circuit
> in the case of *Espenscheid v. DirectSAT USA,
> LLC,* 705 F.3d 770 (7th Cir. 2013).
> Specifically, this Court has permitted FLSA
> certification for trial without requiring
> Plaintiffs to specifically identify their
> representative proof[.] In *Espenscheid,*
> however, the Seventh Circuit emphasized the

17

> necessity of proving representativeness to
> establish both class-wide liability and
> class-wide damages in a collective[.]

(ECF No. 298-1, at 8).  Defendants contend that it is improper
to permit Plaintiffs to proceed as a collective when "mini-
trials" on damages loom for each Plaintiff.  Defendants assert
that the decision to bifurcate the trial is also a "controlling
question of law" because the liability and damages
determinations are interwoven and cannot be separated without
compromising Defendants' rights to a fair trial.  Defendants
assert that the court's intended method of bifurcation "suggests
a liability-only proceeding that depends upon the adoption of an
overall 'average technician' representing every other technician
in the collective." (ECF No. 298-1, at 10).  Defendants contend
that this representative method of establishing liability would
prejudice them because it would preclude them from pursuing
individualized defenses as to "absent members of the
collective[.]" (*Id.* at 11).

Defendants have not met their burden of showing exceptional
circumstances to justify certification of an interlocutory
appeal because the issues raised by them are not "controlling
question of law."  The questions Defendants hope to certify —
whether Plaintiffs may try their FLSA collective claims using
individualized rather than representative proof, and whether the
court may bifurcate the trial into a liability and damages

phases — are procedural challenges to the methods the court selected for the parties to try this case. Despite how they may be articulated, Defendants' procedural challenges in actuality are also substantive challenges to the court's certification decision, as evidenced by the fact that Defendants' seek reversal of the certification decision itself, rather than a ruling from the Fourth Circuit requiring Plaintiffs to use representative testimony in a non-bifurcated trial.

As they are currently framed, the questions Defendants hope to raise on interlocutory appeal relate to the undersigned's determinations on the procedural methods Plaintiffs may use to present their case, in particular, the use of 26 "mini-trials" on damages rather than representative testimony, and the bifurcation of the trial into separate liability and damages phases. These determinations are not "questions of law," however, they are procedural, trial management decisions that are within the court's discretion. *See Mohawk Indus., Inc. v. Carpenter,* 558 U.S. 100, 106 (2009) ("Permitting piecemeal, prejudgment appeals, we have recognized, undermines 'efficient judicial administration' and encroaches upon the prerogatives of district court judges, who play a 'special role' in managing ongoing litigation. (*quoting Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374 (1981)); *see also Thompson v. Bruister & Assocs., Inc.,* 967 F.Supp.2d 1204, 1222 (M.D.Tenn.

19

2013) ("[A] district court has wide discretion to manage collective actions, [] and many fairness and due process concerns can be addressed through trial management, such as the bifurcation of liability and damages, and/or dividing the action into various subclasses.") (internal citations and quotation marks omitted); *see also Gionfriddo,* 769 F.Supp.2d at 886 ("[D]istrict courts have broad discretion to determine whether a collective action is an appropriate means for prosecuting an FLSA cause of action."). Moreover, they are not "controlling" because "litigation will 'necessarily continue regardless of how [these procedural] questions [are] decided.'" *LaFleur v. Dollar Tree Stores, Inc.,* No. 2:12-CI-00363, 2014 WL 2121721, at *2 (E.D.Va. May 20, 2014) (*quoting North Carolina v. ex rel. Howes v. W.R. Peele, Sr. Trust,* 889 F.Supp. 849, 853 (E.D.N.C. 1995)). In addition, as recognized by the Supreme Court of the United States in *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165 (1989), trial courts have considerable authority and relatively broad discretion in managing FLSA collective actions:

> Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure.
>
> . . . .

> [U]nder the terms of Rule 83, courts, in any case "not provided for by rule," may "regulate their practice in any manner not inconsistent with" federal or local rules. Rule 83 endorses measures to regulate the actions of the parties to a multiparty suit. This authority is well settled, as courts traditionally have exercised considerable authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."

*Id.* at 170-73 (internal citations omitted).

Here, Defendants do not identify a rule addressing the use of individualized proof and bifurcation in FLSA collectives; rather, they point to the Seventh Circuit's decision in *Espenscheid*, 705 F.3d 770 (7th Cir. 2013), which affirmed the trial court's decision to decertify a collective, *Espenscheid v. DirectSat USA, LLC,* No. 09-CV-625-BBC, 2011 WL 2009967 (W.D.Wis. May 23, 2011), as supporting the legal proposition that collectives must identify representative evidence to establish class-wide liability and damages. As explained in the court's prior opinion, however, the trial court's decision in *Espenscheid* to decertify that collective and the Seventh Circuit's affirmation of that decision were based on the specific facts of that case, which are readily distinguishable from the present case. In other words, their decisions were context-specific and were not meant to proscribe widely-applicable rules on the requisite procedures for trying FLSA

collectives.[4]   Accordingly,  the  procedural  decisions  challenged by Defendants are not "questions of law" as contemplated by 28 U.S.C. § 1292(b).

To  the  extent  Defendants  are  challenging  the  underlying determination that Plaintiffs' are "similarly situated" and may proceed as a collective, this is also not a pure "question of law"  under  section  1292(b)  but  is  more  appropriately characterized as the application of a legal standard to a set of facts.   *See Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1262 (11th Cir. 2008) ("[U]ltimately, whether a collective action is  appropriate  depends  largely  on  the  *factual  question*  of whether  the  plaintiff  employees  are  similarly  situated  to  one another.") (emphasis added); s*ee LaFleur,* 2014 WL 2121721, at *1-2 (denying movant's request for an interlocutory appeal of the  trial  court's  certification  decision  because  movant's "proposed questions are not pure questions of law; rather, they would  require  the  Fourth  Circuit  to  study  the  record extensively").   Moreover,  the  court's  determination  regarding

---

[4] Specifically, the trial court's decision to decertify the collective was based on the fact that the plaintiffs had not presented a realistic possibility of approximating damages for a class of 2,341 plaintiffs because they could not show that their "representative proof" could accurately approximate damages for each plaintiff and it was too burdensome to hold 2,341 mini-trials on damages.  Here, the undersigned had determined that 26 mini-trials on Plaintiffs' individual damages would not be too burdensome and would be more efficient than holding 26 separate trials.

the propriety of letting this case proceeds as a collective is particularly not a candidate for interlocutory review as it is a discretionary determination that was made after the court applied the three factor test for determining whether Plaintiffs are similarly situated to the evidence presented by the parties. Although Defendants object to the undersigned's determination that Plaintiffs are similarly situated and permitted to proceed as a collective, this is does not render it a "question of law" as contemplated by section 1292(b). Indeed, a review of the underlying certification decision by the Fourth Circuit could not be decided quickly and cleanly; instead, it would require the court to dig through the factual record in this case to determine whether this court abused its discretion by finding that the collective is similarly situated. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008) ("[W]e review a district court's § 216(b) certification for abuse of discretion.").

Even if the issues raised by Defendants could be considered "controlling questions of law," Defendants have not shown that a "substantial basis for difference of opinion" exists on a controlling legal issue within the meaning of Section 1292(b). An issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling legal issue. *McDaniel v. Mehfoud,* 708 F.Supp. 754, 756 (E.D.Va.

1989), *appeal dismissed,* 927 F.2d 596 (4th Cir. 1991) (unpublished opinion); *see also Couch v. Telescope, Inc.,* 611 F.3d 629, 633 (9th Cir. 2010) ("To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear."). Simply because "settled law might be applied differently does not establish a substantial ground for difference of opinion." *Id.*

*Espenscheid* does not evidence a substantial disagreement over a controlling question of law; rather, it involves variant outcome based on the application of settled law to a different factual scenario. See *Stevens v. HMSHost Corp.,* No. 10-CV-3571 ILG VVP, 2015 WL 926007, at *4 (E.D.N.Y. Mar. 4, 2015) ("Given the overwhelming agreement between district and circuit courts as to the propriety of the factors this Court considered in reaching [its] conclusion [that the conditionally certified collective was not similarly situated], it cannot be said that there are grounds for substantial differences in opinion on a controlling question of law."). In addition, *Espenscheid* does not support that there is a substantial ground for difference in opinion on whether plaintiffs in collective actions:  (1) must use representative rather than individualized testimony; or (2) may bifurcate the liability and damages phases of trial. Indeed, most collective actions settle, but:

> [i]n the few reported cases that have proceeded to trial, courts have bifurcated the proceedings, allowing the collective action to proceed first on a representative or group basis for the liability stage of the litigation. Certification then is reviewed at the remedial stage, in order to determine whether the litigation should continue as a group action, whether subclasses should be established, or whether the action should be dismantled into individual trials.

7B Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1807 (3d ed. 2005) (*citing Rodolico v. Unisys Corp.,* 199 F.R.D. 468 (E.D.N.Y. 2001)). Accordingly, the undersigned's decision to certify this collective and the procedures that have were provisionally approved for trying this case are within the court's discretion and accord with those used by other trial courts.

Because the three criteria for an immediate appeal under Section 1292(b) must all be satisfied in order to warrant certification and Defendants have not met the first two criteria, there is no need to go further and discuss whether resolution of their questions will "materially advance this litigation." Defendants' motion for certification will be denied.[5]

---

[5] On November 3, 2014, Plaintiffs filed a motion to set trial date, arguing that because Defendants' motions for decertification and summary judgment had been denied in full or in part, the case was ready to proceed to trial. (ECF No. 310). As Defendants' motion for interlocutory appeal will be denied,

**IV.  Motions to Seal**

In adjudicating the parties' substantive motions for decertification and summary judgment, the court also decided the motions to seal that were filed in conjunction with these motions.  Defendants' motions to seal were granted in part and denied in part, and Plaintiffs' motions to seal were denied.  For all sealing requests that were denied, the parties were directed to file renewed motions to seal with adequate justifications as to why certain exhibits were required to be sealed in their entirety or to provide redacted versions of these exhibits.  (ECF Nos. 278, 279, 301, and 302).  For the sake of brevity, the standard for reviewing motions to seal will not be repeated below, as it was provided in the September 18, 2014 memorandum opinion.

**A.   Exhibits Related to the Parties' Decertification Motions**

On September 26, 2014, Defendants filed a renewed motion to seal certain exhibits to its decertification motion.  (ECF No. 280).  In this renewed motion, Defendants withdraw their confidentiality designations for their payroll compliance and explanation form (Exhibit 11; ECF No. 207), and their paycheck verification procedure forms (Exhibit 50; ECF No. 212).  These

---

this case is ready to proceed to trial.  Thus, Plaintiffs motion to set a trial date will be granted, and the court will hold a telephone conference with the parties on a date set forth in the accompanying order to set a trial date.

documents will be unsealed.   Defendants also submitted redacted versions of employee pay stubs (Exhibits 47-49, 71, and 85; ECF Nos. 281-83, 288, and 297), and timesheets (Exhibits 56-57, 63, 70, and 77-84; ECF Nos.  284-87 and  289-96), that include reasonable  redactions  to  employees'  personal  information. Defendants'  renewed  motion  to  seal  fully  complies  with  the court's foregoing memorandum opinion order (ECF No. 278 and 279) as well as Local Rule 105.11, and therefore, will be granted.

Defendants  indicate  that  following  the  court's  September 18,  2014  order,  which  directed  Plaintiffs  to  refile  a  renewed motion  to  seal  the  exhibits  to  its  opposition  to  Defendants' decertification motion, Plaintiffs informed Defendants that they did  not  intend  to  maintain  the  confidentiality  designations  of any  of  their  exhibits  that  were  originally  filed  under  seal. (ECF  No.  299-1).   Because  Plaintiffs  refused  to  maintain  the confidentiality of these materials, which were originally deemed confidential  pursuant  to  the  court-approved  Confidentiality Stipulation  during  discovery  (ECF  Nos.  37  and  38),  Defendants assert  that  they  have  been  forced  to  do  so  themselves  by  filing the  instant  motion  to  seal.   (ECF  No.  299).   Defendants  withdraw their  confidentiality  designations  for:   a  paycheck  verification form  signed  by  opt-in  Plaintiff  Lionel  Murray  (Exhibit  D;  ECF No.  252);  a  corrective  action  form  prepared  for  opt-in  Plaintiff Lionel  Murray  (Exhibit  U;  ECF  No.  252-3);  a  timesheet  for  opt-in

27

Plaintiff Christopher Adams (Exhibit EE; ECF No. 252-8); and a pay stub for opt-in Plaintiff Christopher Adams (ECF No. FF; ECF No. 252-9).   Defendants assert that Plaintiffs appear to be waiving confidentiality with respect to the information in these documents.   Although these exhibits do contain some personal information of Plaintiffs, they will be unsealed because Plaintiffs have waived any assertion of confidentiality and none of the information contained therein, such as employee identification numbers, requires redaction under Federal Rule of Civil Procedure 5.2.[6]   Defendants seek to maintain under seal Plaintiffs' Exhibits O, P, W, Y, and Z (ECF Nos. 252-1, 252-2, 252-5, 252-6, and 252-7), all of which are excerpts from employee handbooks or policy manuals of Defendants.   Defendants argue that "[f]or the same reasons this Court sealed the complete copies of handbooks and policy manuals, so too should this Court keep excerpts of those handbooks and policy manuals under seal — *i.e.,* they contain proprietary business information."   (ECF No. 299, at 3).   In discussing Defendants' original motion to seal, the undersigned noted that Defendants were permitted to keep full copies of their employee handbook

---

[6] Rule 5.2 requires parties and non-parties making "electronic or paper filing[s] with the court" to make certain redactions if the filing contains "an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number[.]"

and policy manuals under seal with the understanding that Plaintiffs had submitted "the relevant portions of those documents" with their opposition. (ECF No. 278, at 33). Similarly, in denying Plaintiffs' original motion to seal, it was noted that "it is not apparent why portions of Defendants' employee handbook outlining the timekeeping, cellphone, and other policies relevant and relied upon by both parties in their unsealed briefs should be sealed. Defendants renewed motion to seal the same documents provides no factual support as required by Local Rule 105.11 to justify sealing these excerpts in their entirety, nor do Defendants indicate why these policy excerpts are incapable of redaction.[7]   Accordingly, the policy excerpts will be unsealed. In addition, Defendants seek to seal Plaintiff's Exhibit V, a completed "Truck Kit/Tool Issuance Form." (ECF No. 252-4). Defendants contend that this form contains "confidential and proprietary information related to DirectSat's business, including, *inter alia*, the price of certain equipment provided to and used by its technicians to perform installation jobs." (ECF No. 299 ¶ 5). Again, Defendants provide no factual support for why the price of the tools they provide to their technicians is proprietary

---

[7]   Local Rule 105.11 requires parties seeking to seal documents to provide "specific factual representations to justify sealing" in order to avoid this exact quandary, where the court is left to speculate as to why sealing is necessary.

information that requires this form to be sealed in its entirety.

## B. Exhibits Related to the Parties' Summary Judgment Motions

On October 22, 2014, Defendants filed a renewed motion to seal certain exhibits to its motion for summary judgment. (ECF No. 303). Defendants filed redacted versions of Butler's: pay stub (Exhibit 6; ECF 306); timesheets (Exhibit 5; ECF No. 305); and personnel documents (Exhibits 4 and 18; ECF Nos. 304 and 307), which only redacted confidential personal information such as social security numbers. Because Defendants' renewed motion to seal fully complies with the court foregoing memorandum opinion and order (ECF No. 301 and 302) as well as Local Rule 105.11, it will be granted.

Following the issuance of the summary judgment opinion, after being directed to file a renewed motion to seal, Plaintiffs took a familiar stance on the confidentiality of their exhibits. They informed Defendants on October 29, 2014, that they were not going to maintain the confidentiality of the exhibits that were filed in conjunction with their motion opposing summary judgment (ECF No. 309-1), and thereafter, Defendants filed a motion to seal these exhibits. (ECF No. 309). There is substantial overlap between the exhibits Plaintiffs used to support their opposition to Defendants'

motion for decertification and to support their opposition to summary judgment; accordingly, most of the exhibits at issue in this motion to seal were discussed above. Defendants provide the exact same justifications in this motion as they did in the prior motion for why they are withdrawing their confidentiality designations or why they seek to retain an exhibit under seal. Accordingly, the exhibits will receive the same treatment. Defendants withdraw their confidentiality designations for: Plaintiff Butler's earning statements (Exhibit H);[8] Plaintiff Butler's timesheets (Exhibit I; ECF No. 269-1); a paycheck verification form signed by opt-in Plaintiff Lionel Murray (Exhibit J; ECF No. 269-2); a corrective action form prepared for opt-in Plaintiff Lionel Murray (Exhibit M; ECF No. 269-4). For the same reasons discussed above, these exhibits will be unsealed. Again, Defendants seek to retain under seal excerpts from their employee handbooks and policy manuals and their Truck Kit/Tool Issuance Form. (Exhibits L, N, O, P, and Q; ECF Nos. 269-3, 269-5, 269-6, 269-7, and 269-8). Because Defendants have provided the same cursory explanation that these exhibits contain "proprietary business information" without any factual support or proposed redactions, these exhibits will be unsealed.

---

[8] Although Plaintiffs indicated in ECF No. 268-8 that they would be filing Exhibit H under seal, this exhibit was never filed.

**V.    Conclusion**

For the foregoing reasons, Plaintiffs' motions to lift the bankruptcy stay and reopen this case and for reconsideration of their MWPCL claim will be granted.  The parties are directed to file a jointly proposed revised scheduling order regarding how they plan to proceed on the MWPCL claim.  Defendants' motion for certification of an interlocutory appeal will be denied.  The renewed motions to seal filed by Defendants will be granted in part and denied in part.  A separate order will follow.

                                   _____/s/_____
                                   DEBORAH K. CHASANOW
                                   United States District Judge