IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JEFFRY BUTLER, ET AL. | : | |
| | : | |
| v. | : | Civil Action No. DKC 10-2747 |
| | : | |
| DIRECTSAT USA, LLC, ET AL. | : | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for review in this Fair Labor Standards Act ("FLSA") collective action case is the parties' joint motion for approval of a settlement agreement that resolves Plaintiffs' claims for unpaid overtime wages. The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. Because the proposed settlement agreement represents a fair and reasonable resolution of a *bona fide* FLSA dispute, the parties' motion will be granted, and Plaintiff will be directed to file a petition for attorneys' fees and costs by September 18, 2015.

**I.  Background**

This collective action was brought under the FLSA by Plaintiff Jeffry Butler ("Butler") against Defendants DirectSAT USA, LLC ("DirectSAT"), UniTek USA, LLC ("UniTek"), and UniTek

Global Services, Inc. ("UGS") (collectively "Defendants").[1] DirectSAT is a subsidiary of UniTek and UGS, and provides satellite installation services to DirecTV customers throughout the country. Butler is a technician who previously installed, upgraded, and serviced DirecTV equipment at customer locations in Maryland, Virginia, and the District of Columbia. Butler brought this suit against Defendants for their alleged failure to pay overtime wages in violation of the FLSA and various state wage laws. As to the FLSA claim, Butler sought to represent a collective of all technicians employed by Defendants in Virginia, Maryland, and the District of Columbia. Conditional certification of the FLSA collective was granted on April 10, 2012. (ECF Nos. 65 and 66). Defendants filed a motion to decertify the collective on February 3, 2014, which was denied on September 18, 2014. (ECF Nos. 278 and 279). The collective presently consists of named Plaintiff Butler and twenty-five opt-in Plaintiffs (collectively "Plaintiffs"). On May 12, 2014, Defendants moved for summary judgment, which was granted in part and denied in part on October 16, 2014. (ECF Nos. 301 and 302). Shortly after issuance of the summary judgment opinion, this case was administratively closed because Defendants filed a

---

[1] This memorandum opinion includes only a brief recitation of the facts. A full procedural history and factual description of the dispute between the parties can be found in previous opinions. (ECF Nos. 28, 65, 190, 278, and 301).

notice of suggestion of bankruptcy.  (ECF Nos. 311 and 312).  On April 29, 2015, the undersigned granted Plaintiffs' motion to lift the bankruptcy stay.  (ECF Nos. 316 and 317).

On May 15, 2015, the case was referred to Magistrate Judge Day (ECF No. 318), and the parties participated in a settlement conference with Judge Day on August 13, 2015.  The parties agreed to settle their claims on August 17, 2015, and filed an executed settlement agreement (the "Agreement") along with the pending motion on August 28, 2015.  (ECF No. 327).  The Agreement provides that, upon court approval, Defendants will pay each individual plaintiff a specified amount that ranges from $54.36 to $4,197.78, depending on the number of weeks worked by each plaintiff during the three year statute of limitations period.  (ECF Nos. 327-1, at 3-5; 327-2, at 5-7). Defendants also agree to pay the employer share of FICA for the W-2 wages portion of the settlement amounts as well as attorneys' fees and costs, in an amount to be determined by this court following Plaintiffs' submission of a motion requesting such fees and costs.  (ECF No. 327-1, at 5-6).  Defendants do not admit liability, but agree to settle in order to avoid the further costs of litigation.  (*Id.* at 8).  In exchange for the settlement amount, Plaintiffs have agreed to dismiss this lawsuit with prejudice.  (*Id.* at 7).

## II. Analysis

Because Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees, the statute's provisions are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Under the first exception, the Secretary of Labor may supervise the payment of back wages to employees, who waive their rights to seek liquidated damages upon accepting the full amount of the wages owed. *See* 29 U.S.C. § 216(c). Under the second exception, a district court can approve a settlement between an employer and an employee who has brought a private action for unpaid wages pursuant to Section 216(b), provided that the settlement reflects a "reasonable compromise of disputed issues" rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982); *see also Duprey v. Scotts Co. LLC*, 30 F.Supp.3d 404, 407-08 (D.Md. 2014).

Although the United States Court of Appeals for the Fourth Circuit has not directly addressed the factors to be considered in deciding motions for approval of such settlements, district courts in this circuit typically employ the considerations set

4

forth by the Eleventh Circuit in *Lynn's Food Stores*. *See, e.g.*, *Duprey*, 30 F.Supp.3d at 407-08; *Lopez v. NTI, LLC*, 748 F.Supp.2d 471, 478 (D.Md. 2010). Pursuant to *Lynn's Food Stores*, an FLSA settlement generally should be approved if it reflects "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food*, 679 F.2d at 1355. Thus, as a first step, the *bona fides* of the parties' dispute must be examined to determine if there are FLSA issues that are "actually in dispute." *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2 (D.Md. Aug. 31, 2011) (*citing Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227, 1241-42 (M.D.Fla. 2010)). Then, as a second step, the terms of the proposed settlement agreement must be assessed for fairness and reasonableness, which requires weighing a number of factors, including: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel . . .; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-cv-1310, 2009 WL 3094955, at *10 (E.D.Va. Sept. 28,

2009); *see also Duprey*, 30 F.Supp.3d at 408 (citations and internal quotation marks omitted).

### A. *Bona Fide* Dispute

"In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Duprey*, 30 F.Supp.3d at 408 (citing *Lomascolo*, 2009 WL 3094955 at *16-17). Here, there is certainly a *bona fide* dispute.  The undersigned has previously noted that there are genuine disputes as to Defendants' liability.  (ECF No. 301, at 33-55).  Plaintiffs allege, as discussed in greater detail in prior opinions, that they are owed overtime compensation for hours worked performing various tasks, but Defendants assert the tasks are not compensable.  Plaintiffs have continued to assert this liability, and Defendants have not admitted any liability. Thus, the pleadings, along with parties' representations in court filings, establish that a *bona fide* dispute exists as to Defendants' liability for overtime payments under the FLSA.

### B.   Fairness & Reasonableness

Upon review of the parties' submissions and after considering the relevant factors, *see Duprey*, 30 F.Supp.3d at 409, the Agreement appears to be a fair and reasonable compromise of the parties' *bona fide* dispute.

6

The parties have engaged in extensive discovery on both sides.  The parties have had sufficient opportunity to "obtain and review evidence, to evaluate their claims and defenses[,] and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to the trial of this case." *Lomascolo*, 2009 WL 3094955, at *11.  Additionally, the parties "acknowledge no fraud or collusion in reaching" the Agreement (ECF No. 327-2), and there is no evidence that the Agreement is the product of fraud or collusion.  The Agreement appears to be the product of negotiations between counsel, part of which was guided by Judge Day.  Competent and experienced counsel on both sides zealously and vigorously advocated for their clients throughout this extended litigation.

As to the relationship between the amount of the settlement and Plaintiffs' potential recovery, the Agreement appears to be fair and reasonable.  The parties assert that "the settlement is based on the weeks worked by each Plaintiff during a three year statute of limitations period; provides for 45 minutes of unpaid overtime per week; is calculated at 1½ times their regular hourly rate; and includes liquated damages." (ECF No. 327-2, at 5).  It is unclear exactly how much Plaintiffs could recover at trial, but the Agreement uses calculations most favorable to Plaintiffs when possible (for example, three year statute of

limitations as opposed to two).   An individual plaintiff could potentially recover a greater amount at trial if he were able to prove he worked more than 45 minutes of unpaid overtime per week, but each plaintiff would also risk recovering less than the settlement amount or nothing at all if Defendants were successful in their defenses.

In light of the risks and costs to both sides in proceeding with this lawsuit, the settlement amounts appear to be a reasonable compromise over issues that are actually in dispute.

### C.   Attorneys' Fees

Finally, the Agreement's provisions regarding attorneys' fees and costs must also be assessed for reasonableness.   The Agreement provides that – separate and apart from the payments to Plaintiffs – Defendants will pay attorneys' fees and costs incurred by Plaintiffs, in an amount to be determined by the court following Plaintiffs' submission of a request for such fees and costs. (ECF No. 327-1 ¶ 9).

Ultimately, of course, any award of attorneys' fees to Plaintiffs will turn on application of the traditional lodestar methodology factors.   The starting point in the lodestar calculation is multiplying the number of hours reasonably expended by a reasonable hourly rate. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009).   In addition, the specific facts of the case are to be considered in calculating a

reasonable figure.   In assessing reasonableness, the Fourth Circuit has instructed district courts to consider certain factors, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).   Thus, Plaintiffs are advised that, in submitting their request for attorneys' fees and costs, they should provide all documentation necessary to make a lodestar determination, including but not limited to (1) declarations establishing the hours expended by counsel, broken down for each task; and (2) support for the reasonableness of counsel's hourly rate.   *See Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) ("In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in

the relevant community for the type of work for which he seeks an award.") (internal quotation marks omitted).

## III. Conclusion

For the foregoing reasons, the joint motion for approval of a settlement agreement will be granted.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
