IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFRY BUTLER, ET AL.            :

                                 :

    v.                           :   Civil Action No. DKC 10-2747

                                 :

DIRECTSAT USA, LLC, ET AL.       :

                                 :

## MEMORANDUM OPINION

Presently pending and ready for resolution in this Fair Labor Standards Act ("FLSA") case is a motion for attorneys' fees and costs filed by Plaintiffs. (ECF No. 330). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Plaintiffs' motion will be granted in part and denied in part.

## I. Background

Additional background can be found in prior memorandum opinions. (*See, e.g.*, ECF No. 328). This collective action was brought under the FLSA for an alleged failure to pay overtime wages. After nearly five years of litigation, the parties agreed to settle their claims on August 17, 2015. The settlement agreement, which the undersigned approved on September 3, 2015 (ECF Nos. 328; 329), provides that Defendants will pay each individual Plaintiff a specified amount that ranges from $54.36 to $4,197.78, depending on the number of

weeks worked during the three-year statute of limitations period. In all, Defendants agreed to pay Plaintiffs approximately $36,000. In approving the settlement agreement, the court found that a *bona fide* dispute remained as to Defendants' liability for overtime payments under the FLSA, and that the settlement was a fair and reasonable compromise. (ECF No. 328, at 6-8).

The settlement agreement did not include an attorneys' fee and cost calculation, instead providing that Defendants will pay attorneys' fees and costs incurred by Plaintiffs, in an amount to be determined by the court following Plaintiffs' submission of a request for fees and costs. (*See* ECF No. 327-1 ¶ 9). On September 18, Plaintiffs filed such request. (ECF No. 330). Defendants responded (ECF No. 331), and Plaintiffs replied (ECF No. 332).

## II.  Standard of Review

"The proper calculation of an attorney's fee award involves a three-step process. First, the court must 'determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.'" *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). In assessing reasonableness, the United States Court of Appeals for the Fourth Circuit has instructed district courts to consider what

are known as the *Johnson* factors, which are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Id.* at 88 n.5 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). "Next, the court must 'subtract fees for hours spent on unsuccessful claims unrelated to successful ones.' Finally, the court should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" *Id.* (quoting *Robinson*, 560 F.3d at 244. The Fourth Circuit has noted that a district court's determination of attorneys' fees should stand unless the district court abused its discretion by reaching a decision that is "'clearly wrong' or committing an 'error of law.'" *Id.* at 88 (quoting *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998)).

3

## III. Analysis

### A.  *Lodestar* Calculation

### 1.  Hourly Rate

"[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate." *Robinson*, 560 F.3d at 244 (quoting *Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir. 1990)). "In addition to the attorney's own affidavits, the fee applicant *must* produce satisfactory specific evidence of the prevailing market rates in the *relevant community for the type of work for which he seeks an award*," including, for example, "affidavits of other *local* lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Id*. at 244, 245 (emphases added) (internal quotation marks omitted).  As noted by another circuit, "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quoting *Cullens v. Georgia Dep't. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)).  The Local Rules provide non-binding guidelines regarding reasonable hourly rates that vary depending on how long an attorney has been admitted to the bar. Local Rules, App'x B.[1]

---

[1] The Local Rules put forth the following guidelines: $150-225 for lawyers admitted to the bar less than five years; $165-

4

Plaintiffs request the following rates for attorneys who worked on this case:

- Daniel A. Katz (20 years admitted to the bar): $475

- Lucy B. Bansal (1 year): $225

- Meghan Droste (4 years): $225

- Cori Cohen (3 years): $225

- Ryan F. Stephan (15 years): $425

- James B. Zouras (20 years): $425

- Andrew C. Ficzko (6 years): $225

- Teresa M. Becvar (2 years): $225

- Mark Goldstein (4 years): $225

- Jac A. Cotiguala (36 years): $475

- Brian Massatt (7 years): $300

- Paralegals: $150

(ECF No. 330, at 15-16).[2]  Plaintiffs argue that these rates are reasonable because they fall within the guidelines in the Local Rules and because the requested rates are lower than their

---

300 for lawyers admitted for five to eight years; $225-350 for lawyers admitted for nine to fourteen years; $275-425 for lawyers admitted for fifteen to nineteen years; and $300-$475 for lawyers admitted for twenty years or more.  The rate for paralegals and law clerks is $95-150.

[2] Plaintiffs' request includes some billing rates at a higher level than indicated in their brief.  For example, Mr. Stephan has entries at a $550 rate for a portion of the work he performed in relation to the settlement agreement.  (ECF No. 330-6, at 101-102).

actual rates.  (*See* ECF Nos. 330-1, at 3; 330-3, at 2).   In support, Plaintiffs submit copies of affidavits from other attorneys in Illinois that were submitted in an action in the United States District Court for the Northern District of Illinois.   (ECF No. 330-3, at 5-22).

Other than the affidavit of local counsel Daniel A. Katz, (ECF No. 330-4), Plaintiffs do not provide affidavits or other evidence of the prevailing reasonable rates in Maryland for work similar to the work Plaintiffs' counsel performed on this case. Defendants contend that the court should reduce the requested hourly rates, which are at the higher ends of the applicable guidelines ranges, in light of the lack of evidence of prevailing rates within this district.  (ECF No. 331, at 22-23). Specifically, Defendants argue that the rate should be lowered by a formula based on the exact number of years an attorney has been practicing within the guidelines range.  (*Id.* at 20-21).

Defendants' request that the court adopt a formulaic approach to determining a reasonable rate within the guidelines range is unsupported by precedent and generally lowers the rates by too much.  Plaintiffs have not, however, adequately supported their requested rates with sufficient evidence.  They have not produced any specific evidence regarding the prevailing market rate for similar work *within this district*, instead providing copies of affidavits from attorneys in Chicago that were

6

originally submitted in a case in Illinois.  Plaintiffs were
explicitly reminded of this requirement in an earlier opinion
(ECF No. 328, at 9-10), but they failed to provide any
independent, local evidence justifying the requested rates.

Accordingly, Plaintiffs' counsel's hourly rates will be
as follows:

- Daniel A. Katz (20 years admitted to the bar): $425

- Lucy B. Bansal (1 year): $150

- Meghan Droste (4 years): $200

- Cori Cohen (3 years): $200

- Ryan F. Stephan (15 years): $350

- James B. Zouras (20 years): $425

- Andrew C. Ficzko (6 years): $225

- Teresa M. Becvar (2 years): $150

- Mark Goldstein (4 years): $200

- Jac A. Cotiguala (36 years): $425

- Brian Massatt (7 years): $225

- Paralegals and law clerks: $95

### 2.  Reasonable Hours Worked

Plaintiffs provide itemized time records that list the date
of the work, who did the work, the time spent, and a brief
description of the work.  (ECF Nos. 330-5; 330-6).  Plaintiffs
helpfully divide the litigation into phases in accordance with
the Local Rules.  Specifically, Plaintiffs' counsel assert they

worked a total of 2,252.38 hours: 56.55 hours on case development and pleadings; 984.99 hours on discovery and depositions; 612.71 hours on five motions; 297.85 hours on trial preparation; 12.80 hours with regard to Defendants' bankruptcy; 123.18 hours on settlement; and 164.30 hours on the pending fee petition. Plaintiffs assert that they exercised appropriate "billing judgment" by reducing certain categories of entries by one third. (*See* ECF No. 330, at 7-8). Specifically, Plaintiffs reduced entries relating to meetings and correspondence between lawyers and certain court conferences and hearings. Furthermore, Plaintiffs argue that the hours worked are reasonable because Defendants "needlessly prolonged litigation with an unreasonably tenacious defense." (ECF No. 332, at 4-5).

Defendants take issue with many aspects of Plaintiffs' request, and the court will address each argument in turn. First, Defendants argue that many of the entries are impermissibly vague, suggesting 196.1 hours be struck for vagueness. (*See* ECF Nos. 331, at 24-26; 331-9). A "court may reduce the number of hours awarded if the documentation is vague or incomplete." *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F.Supp.2d 780, 788 (D.Md. 2000). "'[C]ounsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures.'" *Id.* at 789 (quoting

*Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)). Defendants assert that numerous entries are too vague, including entries that state "e-mails to and from co-counsel" or simply "with co-counsel." Plaintiffs admit that some entries are less detailed than others, but argue that the meaning of all entries is "certainly ascertainable based on the context and in reference to the particular category and/or phase of the litigation Plaintiffs described in their fee petition." (ECF No. 332, at 9). The undersigned is able to determine the meaning of the less-detailed entries to a sufficient degree of specificity through the context provided by the surrounding entries and the stage of litigation. Plaintiffs' contemporaneous time records "will suffice for purposes of this motion because they provide an adequate basis for determining whether the hours claimed were reasonably expended." *See CoStar*, 106 F.Supp.2d at 789.

Defendants next argue that the court should not award fees for 629.26 hours of "clerical, administrative, and other non-legal work." (ECF Nos. 331, at 26-27; 331-10). Plaintiffs counter only that "[c]lerical and administrative work performed by legal staff was necessary to advance this litigation and is compensable; otherwise it would not be categorized as such in Appendix B of the Local Rules." (ECF No. 332, at 9). Defendants are correct that "fees for administrative work are

generally not recoverable." *Pfieffer v. Schmidt Baking Co., Inc.*, No. CCB-11-3307, 2014 WL 1291814, at *4 (D.Md. Mar. 28, 2014) (citing *Kabore v. Anchor Staffing, Inc.*, No. L-10-3204, 2012 WL 5077636, at *4 (D.Md. Oct. 17, 2012)).  Such purely clerical and administrative tasks "should [be] deducted as a matter of billing discretion." *Manna v. Johnny's Pizza, Inc.*, No. CCB-13-721, 2014 WL 794357, at *4 (D.Md. Feb. 25, 2014). After a careful review of Plaintiffs' request, the court will strike 266.76 hours as being purely clerical or administrative nature.[3]

Finally, Defendants argue that Plaintiffs' request includes "excessive, redundant, or otherwise unnecessary hours spent performing legal tasks," including 150.25 hours of overstaffing on specific tasks and 302.85 hours Defendants contend are unnecessarily charged by Mr. Cotigula and Mr. Zouras, who are senior partners.  (ECF Nos. 331, at 27-33; 331-11; 331-13).  In addition, Defendants request that the court reduce the hours compensated for time spent on the pending motion for fees by eighty percent.  (ECF Nos. 331, at 30-31; 331-12).  In short, Defendants' primary argument is that Plaintiffs inappropriately

---

[3] Defendants are too liberal in marking entries as clerical or administrative.  (*See* ECF No. 331-10).  For example, tasks such as reviewing a court order or opinion and drafting documents are not purely administrative or clerical, and thus are compensable.  Purely clerical work includes such tasks as the downloading, printing, and transmitting of documents and work related to scheduling. *See Pfieffer*, 2014 WL 1291814, at *4.

seek compensation for work performed by multiple attorneys performing similar tasks. This argument invokes both the Local Rules and the general principle of billing judgment. The Local Rules provide that, absent "a showing of a valid reason for sending two attorneys" to a deposition or hearing, "[o]nly one lawyer for each party shall be compensated for attending depositions . . . [and] hearings." Local Rules, App'x B. Moreover, "[g]enerally, only one lawyer is to be compensated for client, third party and intra-office conferences. . . . Compensation may be paid for the attendance of more than one lawyer where justified for specific purposes such as periodic conferences of defined duration held for the purpose of work organization, strategy, and delegation of tasks in cases where such conferences are reasonably necessary for the proper management of the litigation." *Id.* Finally, under the Local Rules, an attorney can generally recover fees for up to two hours of travel time at his or her full billing rate; travel time beyond two hours may be charged at a one-half rate.

To exercise "billing judgment"

> means [counsel] must exclude from their fee applications "excessive, redundant, or otherwise unnecessary [hours]," [*Hensley*, 461 U.S. at 434], which are hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." Norman [*v. Housing Authority of Montgomery*], 836 F.2d [1292, 1301 (11th Cir. 1988)] (emphasis in

> original). As we will explain, these fee
> applicants did fail to exercise billing
> judgment. If fee applicants do not exercise
> billing judgment, courts are obligated to do
> it for them, to cut the amount of hours for
> which payment is sought, pruning out those
> that are "excessive, redundant, or otherwise
> unnecessary." Courts are not authorized to
> be generous with the money of others, and it
> is as much the duty of courts to see that
> excessive fees and expenses are not awarded
> as it is to see that an adequate amount is
> awarded.

*Barnes*, 168 F.3d at 428; *see also Hensley*, 461 U.S. at 434 ("The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'").

Plaintiffs attempt preemptively to address Defendants' concerns by including a one-third reduction of some entries in an exercise of "billing judgment." Plaintiffs also contend that the work of multiple attorneys was necessary due to the complexity and length of the case and Defendants' tenacious defense. (ECF No. 332, at 7-9). As is often the case in disputes over attorneys' fees, the reality lies somewhere in the middle. Plaintiffs are correct that multiple attorneys are justified for work on some tasks and in conjunction with some meetings regarding work organization and strategy. Defendants are also correct that Plaintiffs' billing records contain several examples of overstaffing, including many instances where multiple attorneys bill for significant time reviewing court

12

orders, corresponding with each other, and individually reading the same correspondence from the other side.

Although Plaintiffs are commended for attempting to exercise billing judgment by proactively applying a one-third reduction to some entries, their efforts fall well short of the proper billing judgment anticipated by the Local Rules and case law. Moreover, Plaintiffs made no attempt to limit their billing for travel in accordance with the Local Rules, and their request for 164.63 hours for time spent on the fee petition is excessive, particularly when counsel kept contemporaneous records. The use of eleven attorneys, many of whom are senior attorneys, also supports a smaller lodestar number, particularly because Plaintiffs made no attempt at billing judgment outside of the limited one-third reductions. Due to the prevalence of duplicative and excessive hours spent on routine legal tasks and correspondence, a reduction of one third is appropriate. 1,320.5 hours is a reasonable number of hours for this case. Accordingly, at the reasonable billing rates put forth in the preceding section, the initial lodestar figure is $391,499.33.[4]

## B.   Adjustments to the Lodestar

Defendants argue for two adjustments to the lodestar: to account for the "unsuccessful claims" of dismissed Plaintiffs

---

[4] Plaintiffs' requested lodestar is $684,246.30. (*See* ECF No. 330, at 1). Defendants' requested lodestar is $221,523.33. (*See* ECF No. 331, at 33).

and because of Plaintiffs' overall lack of success. (ECF No.
331, at 33-40). With regard to unsuccessful claims, Defendants
note that 28 of the 54 Plaintiffs who at some point joined this
collective action were dismissed point prior to the settlement
agreement. Defendants also argue that the final settlement
amount of $36,000 indicates a lack of overall success in light
of the $300,644.94 Plaintiffs asserted they were owed in damages
in a settlement letter on August 4, 2015. (ECF No. 331-4).
Plaintiffs counter that they "were significantly successful
throughout the course of the litigation" and "prevailed at every
stage of certification and decertification, advanced and
complied with Defendants' discovery requests that were out of
proportion to the damages sought, and ultimately recovered 45
minutes of unpaid wages per week." (ECF No. 332, at 2, 11).

Defendants have identified 17.55 hours of work performed
solely on behalf of dismissed Plaintiffs. Striking these hours
is appropriate because the dismissed Plaintiffs achieved no
benefit from the settlement agreement and their claims were, for
one reason or another, unsuccessful. Work readily discernible
as being performed solely on behalf of a dismissed Plaintiff
will be stricken. Defendants have not, however, adequately
supported their contention that work performed on behalf of all
Plaintiffs should be reduced by a percentage reflecting a
portion of the work performed on behalf of the dismissed

Plaintiffs.   After this reduction, the lodestar amount is $387,586.00.

Plaintiffs' fee must also be reduced in light of the limited relative success represented by the amount of the settlement agreement and the absence of any declaratory or injunctive relief.   The Fourth Circuit has described this as the third step of a fee calculation, noting that courts "should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff."   *McAfee*, 738 F.3d at 88 (citation and internal quotation marks omitted).   Other times, such a calculation is referred to as an additional focus on the eighth *Johnson* factor, which directs a court to look at "the amount in controversy and the results obtained."   *See Jackson v. Estelle's Place, LLC*, 391 F.App'x 239, 243 (4th Cir. 2010).   Regardless of how it is framed, it is appropriate for a court to adjust the fee awarded based on the amount of success Plaintiffs enjoyed.   While it is natural, and in some sense tempting, to compare the amount of fees sought to the monetary recovery obtained, such an approach is disfavored:

> The Supreme Court has "reject[ed] the proposition that fee awards . . . should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986); *see also Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 190 (4th Cir. 2007) (courts may not "reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations in

15

> proportion to the damages' shortfall."). This is so because plaintiffs "seek [ ] to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms," and fee awards are used to deter future violations. *City of Riverside*, 477 U.S. at 574. Nonetheless, the [4th] Circuit has instructed "the most critical factor in calculating a reasonable fee award is the degree of success obtained." *Brodziak*, 145 F.3d 194, 196 (internal quotations omitted).

*Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 644 (D. Md. 2012); *see also Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 328 n.20 (4th Cir. 2006) (recognizing that "[a]wards of attorney's fees substantially exceeding damages are not unusual in civil rights litigation").

The district court should "reduce the award if 'the relief, however significant, is limited in comparison to the scope of the litigation as a whole.'" *McAfee*, 738 F.3d at 92 (quoting *Hensley*, 461 U.S. at 439-40). Fee awards should be adequate to attract competent counsel, but should not produce a windfall to attorneys. *Id.* (citing *City of Riverside*, 477 U.S. at 580). The appropriate comparison is "the amount of damages sought to the amount awarded." *Id.* (citing *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005)). Here, Plaintiffs sought injunctive and declaratory relief and damages. (ECF No. 1, at 13, 15, 16-17). Plaintiffs may have enjoyed some success at earlier stages of the litigation, but the settlement agreement they ultimately secured provided approximately $36,000, far less than the

16

$300,644.94 Plaintiffs asserted they were owed in damages. (ECF No. 331-4).   As noted before, nonmonetary goals, such as vindicating rights and deterring future violations, can be served by FLSA litigation and can be a measure of a plaintiff's success.   The failure to achieve such goals is indicative of limited success.   During this litigation, the court resolved certain legal issues, but never determined that Defendants' practices violated the FLSA.   Because the parties agreed to a settlement, Plaintiffs did not obtain any benefits of a declaratory judgment or injunctive relief, and Defendants continue to deny liability.   In short, "[t]his award was clearly limited relative to the scope of the litigation" and the relief Plaintiffs initially sought.   *Andrade*, 852 F.Supp.2d at 644. The lodestar amount of $387,586.00 would amount to a windfall for Plaintiffs' counsel in light of Plaintiffs relative success or lack thereof.

On the other hand, Defendants tenaciously litigated this case, and settlement did not occur until the eve of trial.   *See Imgarten v. Bellboy Corp.*, 383 F.Supp.2d 825, 840 (D.Md. 2005) ("Those who elect a militant defense are responsible for the time and effort they extract from their opponents.   A party cannot litigate tenaciously and then complain about the time spent by the opposing party in response.").   A reduction is appropriate due to Plaintiffs' lack of relative success, but not

to the extent Defendants propose. Accordingly, Plaintiffs'
requested fee will be further reduced by one third, and they
will be awarded $258,390.67.

### C.   Costs

Plaintiffs seek to recover $26,112.07 in litigation costs.
In support of their request, Plaintiffs provide an itemized
spreadsheet detailing each cost (ECF No. 330-7), and affidavits
attesting to the accuracy and reasonableness of the costs (ECF
Nos. 330-1 ¶ 17; 330-3 ¶ 17; 330-4 ¶ 11). Defendants primarily
argue that the request must be denied because Plaintiffs failed
to attach vouchers or bills supporting the costs. (ECF No. 331,
at 40-41). Local Rule 109.1(b) directs a party that is
requesting costs to support its request "by affidavit and . . .
a memorandum setting forth the grounds and authorities
supporting the request. Any vouchers or bills supporting the
cost being requested shall be attached as exhibits."

Defendants' reliance on *EMI April Music, Inc. v. Garland
Enters., LLC*, No. DKC-11-3352, 2012 WL 2342994, at *3 (D.Md.
June 19, 2012), to suggest that all of Plaintiffs' costs should
be denied is not persuasive. The plaintiffs in *EMI* submitted
"only dollar amounts incurred each month over the course of the
litigation." *Id.* The plaintiffs provided no description of the
costs other than that the amounts related to necessary work to

be done in this case.[5]   Here, on the other hand, Plaintiffs
provide detailed descriptions, pricing information, and the
specific date the costs were incurred.   (ECF No. 330-7).
Plaintiffs' submission provided Defendants with sufficient
information to challenge individual costs, which Defendants did
in a footnote.  (ECF No. 331, at 40 n.11).   Moreover, Plaintiffs
attached multiple invoices to their reply.   (ECF No. 332-5).
Accordingly, Plaintiffs' request for costs will be assessed, in
full, for reasonableness.

> [T]he Fourth Circuit has held that
> district courts have discretion to determine
> the costs that will be assessed against
> losing defendants in FLSA cases.  *Roy v.*
> *Cnty. Of Lexington, S.C.*, 141 F.3d 533, 549
> (4th Cir. 1998).  . . .  [C]osts charged to
> losing defendants may include "those
> reasonable out-of-pocket expenses incurred
> by the attorney which are normally charged
> to a fee-paying client, in the course of
> providing legal services."  *Spell v.*
> *McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988).
> Types of costs charged to losing defendants
> include "necessary travel, depositions and
> transcripts, computer research, postage,
> court costs, and photocopying."  *Almendarez*
> *v. J.T.T. Enters. Corp.*, No. JKS-06-68, 2010
> WL 3385362, at *7 (D.Md. Aug. 25, 2010).

*Andrade*, 852 F.Supp.2d at 644.   Defendants challenge two
categories of costs sought by Plaintiffs: $1,761.40 for expert
witnesses and professionals, and $4,425.00 in discovery-related
costs.  (ECF No. 331, at 41 n. 11).   Plaintiffs' other requested

---

[5]  The court in *EMI* also denied the plaintiffs' motion
*without prejudice*, providing fourteen days for the plaintiffs to
submit additional detail.

costs appear reasonable, necessary, and are detailed with sufficient specificity. As to expert fees, Defendants argue that the Fourth Circuit has held that such fees are "outside the rubric of 'attorney's fees.'" (ECF No. 331, at 41 n.11 (quoting *Wheeler v. Durham City Bd. of Ed.*, 585 F.2d 618, 624 (4th Cir. 1978)). Expert fees may be separate from "attorney's fees," but Defendants present no argument that they are not recoverable as litigation costs. Defendants are correct, however, that the court ordered the parties to share certain discovery costs. (*See* ECF Nos. 129; 153; 173). Plaintiffs have not articulated why shifting these costs back to Defendants is appropriate, and they do not address Defendants' objections to these costs in their reply. Accordingly, Plaintiffs' request will be reduced by $4,425.00, and they will be awarded $21,687.07 in costs.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for attorneys' fees and costs will be granted in part and denied in part. Plaintiffs will be awarded $258,390.67 in attorneys' fees and $21,687.07 in costs. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge